738 So.2d 1093 (1999)
STATE of Louisiana
v.
Albert J. WOLFE.
No. 98-KA-0345.
Court of Appeal of Louisiana, Fourth Circuit.
April 21, 1999.
*1094 Harry F. Connick, District Attorney of Orleans Parish, Suzanne S. Dickey, Assistant District Attorney of Orleans Parish, *1095 New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge WILLIAM H. BYRNES III, Judge CHARLES R. JONES, Judge Pro Tempore JAMES A. GRAY, II.
JAMES A. GRAY, II, Judge Pro Tempore.
The defendant appeals his conviction of second-degree murder and his sentencing to life imprisonment at hard labor.
On December 7, 1995, the defendant, Albert Wolfe, was indicted for the second-degree murder of Zarnell King. The defendant entered a plea of not guilty at the arraignment held on December 14, 1995. Following a hearing on the motions, the court denied the defendant's motions to suppress the evidence and confession, but granted the motion to suppress an alleged identification. The first trial held on September 17, 1996, was tried by a jury and a mistrial was declared when the jury remained deadlocked on a verdict.
On June 11, 1997, through defense counsel, the right to a jury trial was waived and the defense elected a bench trial. The defendant was found guilty as charged by the court. Following the hearings on the defendant's motion for new trial, the court denied the motion. The defendant, on that same day, waived all legal delays and was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. The defendant's motion for appeal was granted.

FACTS
On the evening of October 13, 1995, Dewayne Thomas was looking out of his second-story bedroom window at Painters Street and Johnson Street in New Orleans. He could see Painters and Almonaster Streets from his window. He saw three men, two sitting and one on a bicycle, on the corner near an old neighborhood grocery store. He saw another man riding a bicycle down North Prieur Street. Thomas saw the man slide the bike under a black vehicle parked near the intersection of North Prieur and Painters Street, and approach the corner on foot. As the man came from the side of the building, he pulled a gun and fired once at the man on the bicycle. After shooting the victim once, the man approached the victim and shot him two more times. The victim had been seated on a bicycle and fell over after the first shot. The two men on the corner ran off when the shots were fired. The shooter ran down Painters Street towards the lake. Thomas grabbed his gun and proceeded downstairs. He ran after the shooter. However, the shooter disappeared on Almonaster Street. Thomas then went back to the crime scene. No one was outside. Soon thereafter, the police arrived. The victim was dead when the police arrived. Some people outside of the neighborhood came out as the police arrived. Thomas spoke with the police briefly. Later, he spoke with Detective Harris. Thomas gave a statement and was shown some photographs. Thomas identified the defendant at trial as the person who shot the victim. He knew the defendant from the neighborhood. Thomas identified the perpetrator as wearing dark jeans, an Indiana Pacers jersey with a black tee shirt underneath, and a Nike cap. The perpetrator was approximately five feet nine inches tall. At the first trial, Thomas described the perpetrator as five feet five inches tall, one hundred eighty-five pounds, and having light brown skin. On October 18, 1995, Thomas saw the defendant in the area of Painters Street and Almonaster Street. He called the police and gave them a description of the defendant.
Detective Michael Mims, a homicide investigator with the New Orleans Police Department, assisted in the investigation. The officer went to the crime scene and spoke with Dewayne Thomas. The officer also assisted in the execution of the search warrant for the defendant's house. A thirty *1096 eight-caliber bullet and some clothes were retrieved from the defendant's house.
Officer Renard Smith received a call for assistance on October 18, 1995. He was told to go to the intersection of Prieur Street and Almonaster Street and search for a subject wearing a black tee shirt and a black cap with a Nike emblem on the front. The request was relayed from the Homicide Division. Officer Smith and his partner, Officer Leonard Carr, proceeded to the area and searched for the subject. At first they did not see anyone fitting the description. They circled the area twice and then noticed a black male fitting the description exit 2615 North Prieur Street and walk across the street to the Winn Dixie supermarket. The officers approached the subject and informed him that he was being detained. They transported the subject to the Homicide Division. The officers also confiscated a bicycle from the subject. A person on the scene claimed he owned the bicycle and complained when the officers took the bike. The bicycle was not processed for fingerprints.
Rhonda King, the victim's mother, testified that on October 13, 1995, her son left home earlier that day on his bike. He returned home around 5:00 p.m. with Ricky Landry. Landry jumped off the victim's bike and left. The victim asked her to fix him something to eat. After he ate supper, he asked his mother to fix him a bath. Ms. King ran her son's bath water and went outside. While she was outside, the victim came out and told her he would be right back. He was going to Ricky's grandmother's house. The victim never returned.
Sgt. Joseph Tanner was present during the statement taken from the defendant by Detective Kenneth Harris on October 18, 1995. Sgt. Tanner testified that the defendant was advised of his rights. After speaking with the officers for a while, the defendant stated that he wished to stop the statement. The interview then ended, and the defendant was transported to Central Lockup.
Ricky Campbell testified that he was standing on the corner of Painters and North Prieur Street on the evening of October 13, 1995. Campbell was on the corner with his sister, Robin, Ricky Landry and Cedric Martin. Campbell, his sister and Landry were trying to purchase marijuana from Martin. Campbell did not see the defendant that night. While they were talking to Martin, the victim rode up on his bike. Out of the corner of his eye, he saw a guy turn the corner and heard a shot. Campbell turned and looked. When he saw the guy, he started running. He then heard two more shots. The shooter was wearing black pants, a black, yellow and white jersey and a black, yellow and white Marvin Gaye cap. The suspect was approximately six feet one inch in height and had a dark complexion. Campbell acknowledged his prior convictions for shoplifting, possession of stolen property, theft, and possession of marijuana. The witness did not speak with the police on the night of the shooting.
Ricky Landry, the victim's cousin, testified that he was standing on the corner of Painters and N. Prieur Street with a few other people when the victim got shot. Landry stated that he, the victim, Ricky Campbell and Cedric Martin were talking when an unknown black male came up and shot the victim. After the victim got shot, Landry and Campbell ran to Campbell's mother's house. Landry called his grandmother and told her to call King's grandmother and tell her that King had been shot. Landry then returned to the scene. He did not see the defendant or the perpetrator. Landry described the perpetrator as being dark, slim, and approximately six feet one inch in height. Landry spoke with the police officers on the scene. He gave the officers Zarnell's name and address. The police never contacted him again. He eventually spoke with someone from the District Attorney's office. Landry testified that the defendant was not the shooter. Landry testified that he did not recognize the shooter as someone from the neighborhood. Landry acknowledged *1097 his prior convictions for possession of stolen property and possession of crack cocaine.

ERRORS PATENT ON THE RECORD
A review of the record reveals no errors patent on its face.

ASSIGNMENT OF ERROR 1
By this assignment of error, the defendant pro se and through appellate counsel contends that his constitutionally guaranteed right to a jury trial was violated because the trial court failed to confer with the defendant prior to accepting the waiver of the right. A review of the record reveals that the trial counsel responded to the trial court's inquiry regarding the election of the mode of trial. The trial counsel waived the defendant's right to a jury trial and elected to have the matter tried before the judge.[1] The defendant contends that the trial counsel's action did not result in a valid waiver of the defendant's right to a jury trial because the trial court should have questioned him personally to insure that he understood the waiver being made on his behalf.
The defendant was convicted of second-degree murder, a crime punishable by a term of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:30.1. Both the United States Constitution and the Louisiana Constitution expressly guarantee the criminally accused the right to a jury trial. U.S. Constitution Amendment VI; La. Constitution Article I, § 16, 17. Article 780 of the Louisiana Code of Criminal Procedure provides that:
A. A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge. At the time of arraignment, the defendant in such cases shall be informed by the court of his right to waive trial by jury.

* * *
La.C.Cr.P. art. 780. The waiver of the right to a jury trial cannot be presumed. State v. McCarroll, 337 So.2d 475 (La.1976). The waiver must be established by a contemporaneous record setting forth the articulated appraisal of that right followed by a knowing and intelligent waiver by the accused. State v. Smith, 447 So.2d 4, 5 (La.App. 3d Cir.1984). The Supreme Court has recognized that the preferred practice would be for the trial judge to personally inform the accused of his right and to require the accused to waive that right in writing or orally in open court on the record. State v. Wilson, 437 So.2d 272 (La.1983). However, the courts have been reluctant to adopt an absolute rule requiring the trial court to personally inform the accused of his right to a jury trial, or otherwise render invalid, any election made. State v. Phillips, 365 So.2d 1304 (La.1978); State v. Page, 541 So.2d 409 (La.App.4th Cir.1989), writ denied 548 So.2d 323 (La.1989). The Supreme Court has permitted a waiver to be made by defense counsel in cases where the defendant was present in court and failed to object when defense counsel made the waiver. Phillips, 365 So.2d at 1309.
The defendant's failure to object to his counsel's action is construed against him in determining the validity of the waiver made while defendant was present in court, as was the case with Mr. Wolfe. The record indicates that the defendant was present with counsel when the election of a bench trial was made. The defendant had an opportunity to object, but failed to do so. The defendant had previously been informed of his right to a jury trial at arraignment on December 14, 1995. On September 16, 1996, he elected to be tried by jury. Thus, he was aware of and understood his right to a jury trial. His failure to object to defense counsel's waiver *1098 of the right for the second trial shall be construed against him. Therefore, we find that the defendant knowingly and intelligently waived that right through counsel.
This assignment is without merit.

ASSIGNMENT OF ERROR 2
Next, the defendant contends that the state failed to present sufficient evidence to support the conviction of second-degree murder. Specifically, the defendant argues through counsel that the state failed to present sufficient evidence to identify him as the perpetrator of the crime.
If the issue of the sufficiency of evidence is raised on appeal, an appellate court must consider whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common expertise. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198, 1201 (La.1984); State v. Addison, 94-2431, p. 6 (La.App.4th Cir. 11/30/95), 665 So.2d 1224, 1228.
To convict a person of second-degree murder, the state has the burden of proving beyond a reasonable doubt: 1) the commission of a homicide, 2) by the defendant, and 3) who personally had the specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1. The defendant contends that the state failed to prove the central element of the crime, i.e. the identity of the perpetrator. The defendant argues that the state's only evidence consisted of a single witness, Thomas, who viewed the incident from a second story window a block away and never got closer than¾ of a block to the perpetrator. Furthermore, the defendant contends that there was no corroborating evidence. The two other men, Ricky Campbell and Ricky Landry, who were with the victim at the time of the incident affirmatively testified that the defendant was not the perpetrator. They also provided descriptions of the perpetrator which were inconsistent with the defendant.
As the fact finder, the trial court has great discretion in weighing the credibility of the witnesses and the evidence presented at trial. As such, an appellate court should not second-guess the court's determination beyond the Jackson sufficiency evaluation. State v. Jones, 94-1261, p. 8 (La.App. 3d Cir. 5/17/95), 657 So.2d 262, 268. In the case sub judice, the trial judge listened to the testimony of Thomas, Campbell and Landry and chose to accept Thomas'. Nothing in the record suggests that the decision was an abuse of the judge's discretion.
Thomas testified that he knew the defendant from the neighborhood. He stated that the street lightly illuminated the area well and he watched the defendant for a few minutes before the actual shooting. He saw the defendant abandon his bike and approach the victim on foot with a gun in hand. He further testified that he saw the defendant fire at the victim, who was on a bike, and when the victim fell, the defendant approached him and fired two more shots. Thomas gave chase, but could not catch the defendant. The trial judge chose this testimony to be the most credible. Based on this testimony and other evidence presented by the state, the trial judge convicted the defendant of second-degree murder. Thomas' positive identification of the defendant and the other evidence established beyond a reasonable *1099 doubt that the defendant was the perpetrator of the crime committed against Zarnell King. Accordingly, this assignment is without merit.

ASSIGNMENT OF ERROR 3
Finally, the defendant contends that the trial court erred when it denied his motion for a new trial.
At the hearing on the motion for a new trial, the defendant presented testimony from several witnesses in support of his contention that he was not the perpetrator. The defendant asserts that the evidence presented warranted a new trial, and therefore, this court must reverse the conviction of the lower court.
When a motion for new trial arises out of a bench trial, the judge is asked to review facts that he has already considered. State v. Young, 95-402 (La. App. 3d Cir.10/4/95), 663 So.2d 301, 306. Absent a showing of clear abuse of discretion, the trial judge's ruling on a motion for new trial will not be disturbed on appeal. State v. Walter, 94-2221 (La.App. 4th Cir. 5/29/96), 675 So.2d 831.
Pursuant to La.C.Cr.P. art. 851, a motion for new trial should be granted when "[n]ew and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, as not discovered before or during the trial, is available, and if the evidence had been introduced at trial it would probably have changed the verdict or judgment of guilty."
At the hearing on the motion, Linda Watson and Shanna Jefferson both testified that on the night of the incident, the defendant was with them at a card party on St. Ferdinand Street, and thus, was not the perpetrator. Watson testified that the defendant left around 10:45 p.m. to walk two ladies home from the party.
Robin Hilton, a witness at the first trial held on September 17, 1996, testified that on the night of the incident, she was with her brother, Campbell, Landry, Martin and the victim, and that the defendant was not the shooter. However, on cross-examination, she admitted she did not actually see the shooting, but she did see a guy putting a gun in his pants and riding off on a bicycle.
Delores Webster testified that on the night of the incident, she was standing on her porch and witnessed the shooting. She testified that the perpetrator was a tall, slim, dark man, and not the defendant. She further stated that after the shooting, Thomas came out of his house, but did not chase anyone. He merely stood with Webster and her husband by the victim until the police arrived. Finally, Cedric Martin testified that he was on the corner with Campbell, Landry and the victim on the night of the shooting and that the defendant was not the perpetrator.
In denying the defendant's motion for new trial, the trial court noted that all of the witnesses who testified were residents of Orleans Parish and would have been available to testify at trial. Hilton, who testified at the first trial, stated that she was working on the day of the second trial and would have testified if she had been notified. The court further noted that the testimony of Hilton, Martin and Watson was simply cumulative of Campbell's and Landry's testimony at trial. There was no evidence produced which indicated that the witnesses could not have discovered with due diligence before or during trial. Particularly, if Watson and Hilton were alibi witnesses, the defendant would have known to have subpoenaed them for the trial. Thus, the defendant did not meet his burden that this "newly discovered" evidence was not discoverable with reasonable diligence before or during trial. The trial court did not err when it denied the defendant's motion for new trial.
This assignment is without merit.

CONCLUSION
Based on the foregoing reasons, the conviction and sentence of the defendant are affirmed.
NOTES
[1] Both parties informed the court they were ready to proceed with the trial. The court, then asked the defense counsel: "Will that be Judge or Jury?", to which defense counsel responded, "Judge trial." The court asked if defense counsel was "waiving the jury", to which defense counsel responded, "Yes sir".