STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-1071


STATE OF LOUISIANA

VERSUS

JAMARLON PIERRE


**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 18733-1
HONORABLE ERIC R. HARRINGTON, DISTRICT JUDGE

**********

**PHYLLIS M. KEATY**
**JUDGE**

**********

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Phyllis M. Keaty, Judges.


AFFIRMED.

**Van H. Kyzar**
**District Attorney**
**Post Office Box 838**
**Natchitoches, Louisiana  71458-0838**
**(318) 357-2214**
**Counsel for Appellee:**
      **State of Louisiana**

**Alex J. Washington**
**Washington & Wells**
**1700 Irving Place**
**Shreveport, Louisiana  71101**
**(318) 841-1233**
**Counsel for Defendant/Appellant:**
  **Jamarlon Pierre**

**KEATY, Judge.**

Defendant, Jamarlon Pierre, appeals his convictions and sentence. For the following reasons, we affirm.

## PROCEDURAL BACKGROUND

On December 12, 2011, Conswayla Mitchell was residing at her house in Natchitoches, Louisiana, where she lived with her fiancé, Tyrell Thomas. Thomas, a drug dealer, was out of town at the time. At approximately 9:00 a.m., two men kicked in her front door and entered her house. They proceeded into her bedroom where one of the men shot Mitchell. Before leaving, the men confiscated a gun and $2,200 in cash. After a tip was receivied by the police, Defendant and other individuals were arrested.

Defendant was charged with attempted first degree murder, aggravated burglary, and armed robbery. The Bill of Information was amended to attempted second degree murder, violations of La.R.S. 14:27(A) and La.R.S. 14:30.1(A)(1), and armed robbery, a violation of La.R.S. 14:64. On January 22, 2014, Defendant was found guilty following a jury trial. He was sentenced to forty-five years at hard labor for attempted second degree murder and forty-five years at hard labor for armed robbery. The sentences were ordered to be served concurrently without benefit of probation, parole, or suspension of sentence.

Defendant appeals his convictions and sentence, assigning the following three errors: (1) the evidence was insufficient to convict him of attempted second degree murder and armed robbery; (2) the trial court erred in sustaining the State's objection to Defendant's hearsay statements; (3) his sentence was unconstitutionally excessive.

## DISCUSSION

### I.       Errors Patent

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

### II.      First Assignment of Error

In his first assignment of error, Defendant contends that the evidence was insufficient to convict him of attempted second degree murder and armed robbery.

The standard of review utilized in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979)). The *Jackson* standard of review is legislatively embodied in La.Code Crim.P. art. 821 and "does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521.

In this case, Defendant was charged with second degree murder, which is defined as the killing of a person "[w]hen the offender has a specific intent to kill or to inflict great bodily harm[.]" La.R.S. 14:30.1(A)(1). Attempt is defined as:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

La.R.S. 14:27(A). Specific intent may be inferred from the circumstances surrounding the accused's actions. *State v. Thomas*, 10-269 (La.App. 3 Cir. 10/6/10), 48 So.3d 1210, *writ denied*, 10-2527 (La. 4/1/11), 60 So.3d 1248, *cert. denied*, __ U.S. __, 132 S.Ct. 196 (2011). Louisiana jurisprudence holds that pointing and firing a gun at a person indicates an intent to kill. *Id*.

Defendant was also charged with armed robbery, which is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64(A).

At trial, Mitchell testified that on the morning in question, she looked out of her living room window and saw three men in a black Nissan pull into her driveway. She testified that the men exited the vehicle and she "could see the one dude that I could identify" standing on the side of the car. Mitchell testified that since she did not recognize the men, she went to her bedroom where she looked out of another window and saw two of the men walking to her front door. She testified that after she heard a knock, the men entered her front door and proceeded to her bedroom wherein one of the men shot her. Mitchell testified that the shooter wore a ski mask which covered his face. She testified that following the shooting, the men asked for money. Mitchell testified that she told them that money was located in a nearby nightstand, which also contained a gun. She testified that she never saw the money nor the gun following the incident. Mitchell testified that she subsequently provided the police with an identification of the man standing beside the black Nissan. She testified that she picked Jermaine LaCaze from a photographic lineup, identifying him as the man standing by the Nissan.

3

Deputy Winfred McDowell, Jr., of the Natchitoches Parish Sheriff's Department, testified that he investigated the incident and that Mitchell stated that she was shot by the shorter of the two men who entered her house. He testified that a composite sketch was prepared of one of the men based upon a description Mitchell provided. McDowell testified that following dissemination of this composite sketch to the public, law enforcement received a tip that the sketch favored LaCaze. McDowell testified that based upon this information, a photograph lineup was taken and presented to Mitchell which contained LaCaze's picture. He testified that Mitchell identified LaCaze as being one of the individuals involved in the incident.

LaCaze testified that on the morning in question, he was driving his grandmother's Nissan Sentra when he picked up Perry Willis and Defendant, who wanted to get codeine at Thomas's house. When they arrived at Mitchell's house, LaCaze testified that he went to the front door and knocked although nobody answered. He testified that Defendant and Willis subsequently exited the car and approached to the front door. LaCaze testified that Defendant "knocked the door in with his shoulder" and Defendant and Willis "both ran in with guns." He testified that Defendant was wearing a ski mask whereas Willis was not. LaCaze testified that as the two men were inside the house, he returned to the car and attempted to leave. He testified that as he backed out of the driveway, however, the other two men ran out of the house and jumped into the car when Willis put a gun to LaCaze's head for trying to leave them. LaCaze testified that they left Mitchell's house with a cell phone, methanphetamine, and money, although LaCaze never took any of the stolen money for himself. He testified that in order to evade police, he drove to Michael Phillips's property wherein Defendant got

4

Willis to bury the guns in the woods on the side of Phillips's house. He testified that they parked the Nissan at Phillips's property and that Charles Kelly subsequently picked them up. LaCaze testified that although he never heard a gun shot at Mitchell's house, he knew that a gun had been fired as he smelled gunpower when the other two men re-entered the car following the home invasion. LaCaze testified that Defendant told him that he "had to shoot" Mitchell, and LaCaze heard Defendant tell Kelly that he "had shot the bitch."

LaCaze testified that after Kelly picked them up, they went to the mall where Defendant and Willis purchased presents and clothes. He testified that Kelly subsequently dropped him off at home. LaCaze testified that thereafter, he took his wife's car to Phillips's house and told Phillips that the Nissan had broken down and that he would retrieve it in a few days. LaCaze testified that he and Mario Jackson retrieved the car a few days later, taking it to Tootie Gay's house. He testified that at Gay's house, he removed the license plate, placed it into the trunk, left the car there, and went to Dallas where he remained until he was arrested on January 11, 2012.

LaCaze testified that he was charged as a principal to both armed robbery and aggravated burglary and that he revealed Defendant's and Willis's involvement five months following his arrest. LaCaze testified that no promises were made for his testimony, explaining that he wanted it to be known that he did not know that Defendant and Willis were going to rob and shoot Mitchell. He further testified that he went with the police to Phillips's property where the guns were allegedly buried, but they could not be located.

Jackson and Phillips testified on behalf of the State. Their testimony corroborated LaCaze's testimony regarding parking the Nissan Sentra at Phillips's

5

house, removing the car from Phillips's house, and parking it at Gay's house. Kelly, who was declared a hostile witness by the trial court, also testified on behalf of the State. His testimony corroborated LaCaze's testimony in that after receiving a telephone call from Defendant, he went to Phillips's house to pick up the men. Kelly testified that they subsequently proceeded to Bossier City where they spent the money, further corroborating LaCaze's testimony. Kelly testified that all three men had a gun, including LaCaze. Kelly admitted to making a statement to the police in July 2012, that Defendant had told him that he shot Mitchell.

McDowell testified that a black Nissan registered to LaCaze's grandmother was located at Gay's house and that LaCaze was arrested in January 2012. He further testified that based on the information received from LaCaze and Phillips, Willis and Defendant were also arrested.

The above testimony shows that Mitchell was shot following a home invasion and robbery. Although only Mitchell, Defendant, and Willis know what happened during the home invasion, LaCaze's testimony as to the occurrences following the home invasion was corroborated by the State's witnesses. In his brief, however, Defendant questions LaCaze's credibility given his prior felonies. As to a witness's credibility, "'[i]t is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review.'" *State v. F.B.A.*, 07-1526, pp. 1-2 (La.App. 3 Cir. 5/28/08), 983 So.2d 1006, 1009, *writ denied*, 08-1464 (La. 3/27/09), 5 So.3d 138 (quoting *State v. Freeman*, 01-997, pp. 2-3 (La.App. 3 Cir. 12/12/01), 891 So.2d 578, 580).

In this case, the jury believed LaCaze's testimony despite the conflicting testimony as to whether he had a gun. In that regard, "[i]t is well-settled jurisprudence that the testimony of a single witness, absent internal contradictions or irreconcilable conflicts with physical evidence, is sufficient to support a conviction." *State v. Jeter*, 09-1004, p. 3 (La.App. 3 Cir. 4/7/10), 33 So.3d 1041, 1043. The conflicting testimony about whether LaCaze had a gun does not contradict evidence showing that Mitchell was shot and robbed following the home invasion.

Finally, the above testimony places LaCaze, Defendant, and Willis at the crime scene. Regardless of who shot Mitchell, Defendant was at least a principal in the robbing and shooting. A principal is defined as "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La.R.S. 14:24. Under this theory, a person may be convicted of an offense even though he did not personally fire the fatal shot. *State v. Brooks*, 45,778 (La.App. 2 Cir. 3/2/11), 58 So.3d 506, *writ denied*, 11-631 (La. 10/7/11), 71 So.3d 309.

Based on the foregoing, we find that the evidence was sufficient to sustain the verdicts of attempted second degree murder and armed robbery beyond a reasonable doubt. Accordingly, this assignment of error is without merit.

### III. Second Assignment of Error

In his second assignment of error, Defendant contends that the trial court erred in sustaining the State's objection to Defendant's hearsay statements. In his brief, however, Defendant really argues that the trial court allowed hearsay testimony from the State's witnesses which was damaging to his defense.

7

Hearsay is defined as follows:

> **A. Statement.** A "statement" is:
>
> (1) An oral or written assertion; or
>
> (2) Nonverbal conduct of a person, if it is intended by him as an assertion.
>
> **B. Declarant.** A "declarant" is a person who makes a statement.
>
> **C. Hearsay.** "Hearsay" is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.

La.Code Evid. art. 801.

In his brief, Defendant contends that LaCaze's testimony, regarding Willis's statement made prior to entering Mitchell's house, was hearsay. The trial court testimony shows that the State's counsel asked LaCaze what happened when Defendant and Willis walked onto Mitchell's porch. LaCaze responded by testifying that Willis stated that somebody was looking out of the window. Defense counsel objected to this as hearsay which was subsequently overruled by the trial court, finding that it was admissable pursuant to La.Code Crim.P. art. 801(D), which provides:

> **(4) Things said or done.** The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.

The trial court ruled that the statement was "a part of the res gestae of the event or the occurrence."

8

In *State v. Taylor*, 01-1638, pp. 12-13 (La. 1/14/03), 838 So.2d 729, 743, *cert. denied*, 540 U.S. 1103, 124 S.Ct. 1036 (2004) (quoting *Old Chief v. U.S.*, 519 U.S. 172, 188, 117 S.Ct. 644 (1997)), the supreme court stated:

> [U]nder the rule of narrative completeness incorporated in the *res gestae* doctrine[,] "the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault."

In this case, and prior to LaCaze's testimony regarding Willis's statement, Mitchell had already testified that she looked out the window to see who pulled up in an unknown vehicle. Willis's statement preceded the two men breaking into Mitchell's house. Willis's statement, therefore, was part of the res gestae of the event or the occurrence. Accordingly, we find that the trial court did not err when it ruled that the statement was admissible.

Defendant also argues that hearsay occurred when LaCaze testified that Willis pointed a gun to his head, as shown by the following colloquy occurring between the State's counsel and LaCaze:

Q.    You said that Mr. Willis put a gun to your head?

A.    Yes Sir.

Q.    Do you know what caused him to do that?

A.    Because I was fixing to leave him.

Q.    Okay. Did he say anything to you?

A.    He told me . . .

At this point, defense counsel argued that the yet to be revealed statement violated the right to confrontation and cross-examination. The trial court overruled the objection and held that it was "probably part of the res gestae under Article

9

801[,]" although it "clearly falls under Article 803.2 as an excited utterance." The State then again asked LaCaze the same question wherein he replied, "I was scared. [Willis] put the gun to my head, but [Defendant] told him to chill out." There was no objection to what Defendant said to Willis.

Similar to the instant case, in *State v. Howard*, 04-499 (La.App. 3 Cir. 11/17/04), 888 So.2d 375, *writ denied*, 04-3216 (La. 4/8/05), 899 So.2d 13, no objection was made to certain statements made by witnesses. We held that "hearsay that is not objected to becomes substantive evidence. Objections not made at the time of their occurrence are waived on appeal." *Id.* at 381-82 (footnotes omitted). Therefore, even if what Defendant said in the instant case was hearsay, the issue was waived since there was no objection. *Id.*

Finally, Defendant, whose nickname is "Bohonka" according to LaCaze's tesimony, contends that Kelly's testimony regarding a statement made by Willis to Defendant was hearsay. The trial court testimony shows that the following colloquy occurred between the State and Kelly regarding statements he made to the police, as follows:

> Q. Also, that July 5, 2012 statement. You told McDowell . . . after we dropped LaCaze off, Perry Willis was like, damn Honka, you know you ain't have to shoot her, why you shoot her man? Honka . . .
>
> MR. METHVIN: Again, objection, hearsay.
>
> Q. Honka . . .
>
> MR. METHVIN: Within hearsay.
>
> THE COURT: Let me point out to you, I did declare him a hostile witness.

Hostile witnesses are discussed in La.Code Evid. art. 611 as follows:

> **A. Control by court.** Except as provided by this Article and Code of Criminal Procedure Article 773, the parties to a proceeding

10

have the primary responsibility of presenting the evidence and examining the witnesses. The court, however, shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to:

(1) Make the interrogation and presentation effective for the ascertainment of the truth;

(2) Avoid needless consumption of time; and

(3) Protect witnesses from harassment or undue embarrassment.

. . . .

**C. Leading questions.** Generally, leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony and in examining an expert witness on his opinions and inferences. However, when a party calls a hostile witness, a witness who is unable or unwilling to respond to proper questioning, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions. Generally, leading questions should be permitted on cross-examination. However, the court ordinarily shall prohibit counsel for a party from using leading questions when that party or a person identified with him is examined by his counsel, even when the party or a person identified with him has been called as a witness by another party and tendered for cross-examination.

In this case, the trial court declared Kelly a hostile witness such that La.Code Evid. art. 611(C) authorized the State's use of leading questions. "The use of leading questions is largely within the discretion of the trial court, and only clear abuse of that discretion which prejudices the defendant's rights will justify reversal of a conviction." *State v. Grady*, 47,622, p. 22 (La.App. 2 Cir. 1/16/13), 108 So.3d 845, 858, *writ denied*, 13-294 (La. 10/4/13), 122 So.3d 551. Accordingly, we find that the trial court did not abuse its discretion in this regard.

We further note that prior to this objection, there was other witness testimony indicating that Defendant bragged about shooting Mitchell without objections. Therefore, even if Kelly's statements as alleged by Defendant

11

constitute hearsay, the other witness statements that were not objected to would become evidence. *Howard*, 888 So.2d 375.

Accordingly, Defendant's assignment of error is without merit.

## IV. <u>Third Assignment of Error</u>

In his third assignment of error, Defendant contends that his forty-five years' imprisonment was unconstitutionally excessive. He contends that there lacked sufficient aggravating circumstances warranting the sentence.

Defendant was convicted of attempted second degree murder, which carries a sentence of imprisonment "at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence." La.R.S. 14:27(D)(1)(a) and 14:30.1(B). He was sentenced to forty-five years at hard labor. Defendant was also sentenced to forty-five years at hard labor for armed robbery, which carries with it a sentenence of imprisonment "at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence." La.R.S. 14:64(B).

In this case, Defendant failed to object to his sentences at the sentencing hearing, nor did he file a motion to reconsider pursuant to La.Code Crim.P. art. 881.1(E), which provides, in pertinent part:

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

Normally, we would proceed with a bare bones review of the excessiveness of the sentence. However, we decline to do so in this case since Defendant, in his brief, discusses only "the sentence" but fails to state which sentence is excessive or whether both sentences are excessive. Furthermore, following Defendant's

12

sentencing in this matter, the State filed a habitual-offender bill in the Natchitoches Parish trial court, Docket Number 21363. He was adjudicated a third-time felony offender on June 25, 2014, according to appellate court Docket Number 14-1333. At that adjudication hearing, the trial court vacated "[t]he previous sentence in Docket Number C18733-1A[,]" although it failed to state which sentence was vacated. Furthermore, in appellate court Docket Number 14-1333, and with respect to the habitual-offender sentence of life imprisonment, we vacated it and remanded the matter, finding that the trial court did not specify which sentence in the current case was being enhanced. Accordingly, we find that the issue of excessiveness is both moot and precluded from review.

## DECREE

Defendant's convictions and sentences are affirmed.

**AFFIRMED.**