STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-968

STATE OF LOUISIANA

VERSUS

VICTOR WAYNE LOYD

**********

ON APPEAL FROM
THIRTY-FIFTH JUDICIAL DISTRICT COURT
GRANT PARISH, NO. 18-346
HONORABLE WARREN D. WILLETT, DISTRICT JUDGE

**********

VAN H. KYZAR

JUDGE

**********

Court composed of Sylvia R. Cooks, John E. Conery, and Van H. Kyzar, Judges.

CONVICICTION AFFIRMED. SENTENCE VACATED. REMANDED
FOR RESENTENCING WITH INSTRUCTIONS.

**Douglas Lee Harville**
**Louisiana Appellate Project**
**P.O. Box 52988**
**Shreveport, Louisiana 71135-2988**
**(318) 222-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
        **Victor Wayne Loyd**

**James P. LeMoine**
**District Attorney**
**Renee W. Nugent**
**Assistant District Attorney**
**Thirty-Fifth Judicial District**
**200 Main Street**
**Colfax, Louisiana 71417**
**(318) 627-2971**
**COUNSEL FOR APPELLEE:**
        **State of Louisiana**

**KYZAR, J.**

Defendant, Victor Wayne Loyd, appeals his conviction for unauthorized use of a motor vehicle, a violation of La.R.S. 14:68.4. For the reasons set forth herein, Defendant's conviction is affirmed, the sentence is vacated, and the case remanded for resentencing with instructions.

## DISCUSSION OF THE RECORD

On May 21, 2018, the State filed a bill of information charging Defendant with unauthorized use of a motor vehicle, in violation of La.R.S. 14:68.4. On July 5, 2018, Defendant pled not guilty and waived his right to a trial by jury. The district court heard evidence and argument on August 9 and took the matter under advisement.

The evidence adduced at trial revealed that, in September of 2017, Carol Spotsville, a relative of Defendant, made a verbal agreement with him to repair a dented area on her 2006 Hyundai Santa Fe. She agreed to have Defendant do the repair work chiefly because he was charging her a low price. Also, he told her he would have the job done by noon the next day. Defendant drove the victim's car from her house to the area he was using as a body shop. The next day, he called to tell her he could not have the car ready by noon, but that it would be ready by 3:00 p.m. She testified that she repeatedly called him after the car was not returned after 3:00 but got no answer. She did not hear from him until approximately 8:30 p.m., when she called, and he answered only to tell her he had driven the car into Alexandria and collided with another vehicle.[1] The victim testified that Defendant was not authorized to drive the vehicle; she thought his girlfriend (his wife by the time of the trial) was going to drive it.

---

[1] While the victim testified that Defendant provided the information about the accident in response to her call, Defendant stated that he called the victim some 30 minutes after the accident to tell her what had occurred.

On August 16, 2018, the court found Defendant guilty as charged. On September 13, the court sentenced Defendant to two years at hard labor, to run consecutively to any other term. Also, he was ordered to pay a fine of seven hundred and fifty dollars and restitution to the victim. The trial court recommended work release, if available.

Defendant now seeks review by this court and assigns as a single error that there was insufficient evidence to support his conviction for unauthorized use of a motor vehicle.

## SUFFICIENCY OF THE EVIDENCE

In his sole assignment of error, Defendant argues the evidence adduced at trial was insufficient to support his conviction for unauthorized use of a motor vehicle. Specifically, he argues the State failed to prove beyond a reasonable doubt that his use of the victim's vehicle was unauthorized. The general analysis for insufficiency claims is well-established:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Unauthorized use of a motor vehicle is defined by La.R.S. 14:68.4(A), which states in pertinent part: "Unauthorized use of a motor vehicle is the intentional

2

taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently." The key issue that arose at trial was whether Defendant's use of the Hyundai was unauthorized. The victim testified that he was not authorized to drive the vehicle at any time; she expected his girlfriend, Doris Loyd, to drive if there was any need. Doris and Defendant both testified that he was authorized to drive the Hyundai. Defendant testified that the victim's husband saw him drive the Hyundai when Defendant picked it up at the victim's residence. Thus, resolution of the issue, and ultimately the verdict, hinged upon a credibility determination.

The trial court explained its ruling at some length:

BY THE COURT: You can have a seat over there. Counsel, last week we had a bench trial on a charge of Unauthorized Use of a Movable, um, after the conclusion of the trial, the Court um, recessed the trial to allow me to research the jurisprudential handling of consent, which I think was the primary - - one of the primary issues in the case, was whether um, or not [Defendant], had the consent of Ms. Spotsville to use her vehicle - - her SUV uh, on the - - at the time in question.

And um, the Court uh, did - - the Court has researched the jurisprudence involving the Unauthorized Use of a Motor Vehicle, the Court has - - also received a case that was submitted by Mr. Wilson for the Court's consideration.

And the - - the jurisprudence um, the jurisprudence seems to focus on - - due to the fact that it is a crime that re - - requires intent, uh, the jurisprudence seems to focus on the Defendant's intent in connection with the consent. Um, and from a civil standpoint, I think for both parties to have an agreement, they both have to have an understanding of what is happening, they have uh, - - to form the consent, both have to have a similar understanding, and I'm not saying that doesn't exist in a criminal standpoint, but, in the context of these cases, the cases - - the court seem to have focused on what was the Defendant's intent or understanding of his use of the vehicle.

And um, I think there were - - there had been similar cases in the past, uh, one, would be *State vs. Varnado*, [01-367 (La.App. 5 Cir. 9/13/01), 798 So.2d 191], in that particular case a uh, an employee had use of a transport van to haul employees from one location to another,

3

and he was supposed to be back on Friday evening after transporting people to the work - - work site, and uh, he didn't make it back until Sunday evening. And uh, apparently the employer got uptight about Mr. Varnado using the van for the weekend, and uh, the Court - - the Court found there was sufficient proof of intent in that case due to the fact that the Defendant refused or failed to communicate with his employer's repeated requests or repeated attempts to contact him over that weekend period.

Uh, another case was *State vs Spencer* [97-811 (La.App. 5 Cir. 1/27/98), 707 So.2d 119]. Uh, in Spencer um, apparently it was a uh, test drive situation where the Defendant went to a mo - - and automobile location, and took the car for a test drive, and apparently the salesman, and the car lot didn't feel like a 24 hour test drive was reasonable under the circumstances, and um, the - - the Court seem to agree that they thought that 24 hours was kind of a long test drive for - - for their vehicle, and they - - they upheld the conviction for Unauthorized Use of a Motor Vehicle.

Um, just for purposes of findings in this case, um, the Court believes that Ms. Spotsville hired [Defendant] to perform um, repair work to her automobile. And uh, the parties had agreed that he was going to pick that vehicle up from - - from her house, and take it to his repair shop. And uh, that - - that seem[s] to be a consistent belief from all the witnesses. Uh, Ms. Spotsville testified, [Defendant] testified, and his wife testified, they were all present at the location in the parking lot where this initial discussion took place where [Defendant] was going to come pick up the vehicle. There was a further discussion at Ms. Spotsville's home where, again, it was discussed that uh, we have other engagements we're going to right now, and I'm going to come back later, and take your car to my shop, and so, I think it's clear that [Defendant] had initial um, authorization to drive Ms. Spotsville's car.

Um, the witnesses are also very consistent that these repairs were going to be completed by noon the next day. And [Defendant] has explained that he wasn't able to meet that deadline and he decided to extend how long he was going to work on the car until 3:00 PM. He did not meet that deadline, and everyone is consistent as to, that did not occur. And [Defendant] unilaterally decided to extend the deadline, and to drive her car around in Alexandria until he wrecked it around 6:30 or 7 that evening.

It is also significant that there was contact between [Defendant] and Ms. Spotsville prior to noon and prior to 3:00 PM, but, no communication from 3:00 PM until - - at some point after the wreck. Ms. Spotsville testified that she was uh, concerned about her car and repeatedly tried to contact [Defendant] from 3:00 PM until he - - she finally got a call.

I think that that is significant. I think it is significant that there was no communication by [Defendant] from 3:00 PM until after the

4

wreck. And the reason it's significant is because I think [Defendant] knew he had exceeded his authority or had exceeded his use of her vehicle. Um, whether the reason he took the car was in the scope of his repair, I don't think it matters. He had clearly exceeded the time that everyone had agreed to, everyone had agreed to noon, I don't think Ms. Spotsville agreed to 3:00 but she didn't have much choice. She never agreed 'till[sic] 6:30 or 7:00 that PM.

## COURT'S RULING

And I think it is - - whether it's 24 hours, such as in the *Spencer* case, or whether it's two (2) days in the *Varnado* case, when a defendant exceeds his permitted use of the vehicle, that is an unauthorized use of that motor vehicle, and I believe the State has met it's burden of proving beyond a reasonable doubt that [Defendant] committed an Unauthorized Use of Ms. Spotsville's vehicle on the day in question.

This court, in considering the proof necessary for a conviction for the offense

of unauthorized use of a motor vehicle, has explained:

The Defendant was convicted of unauthorized use of a motor vehicle, which is "the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently." La.R.S. 14:68.4.

In *State v. Joseph*, 05-368 (La.App. 5 Cir. 1/17/06), 921 So.2d 1060, the fifth circuit discussed unauthorized use of a motor vehicle as follows:

This Court, while acknowledging that there are few published cases interpreting La. R.S. 14:68.4, has found the jurisprudence interpreting La. R.S. 14:68 (prohibiting the unauthorized use of a movable) instructive since the two statutes proscribe the same conduct. *See: State v. Varnado*, 01-367, p. 4 (La.App. 5th Cir.9/13/01), 798 So.2d 191, 193; *State v. Spencer*, 97-811, pp. 6-7 (La.App. 5th Cir.1/27/98), 707 So.2d 119, 120.

In *State v. Bias*, 400 So.2d 650, 652-653 (La.1981), the Louisiana Supreme Court clarified the meaning of La. R.S. 14:68 as follows:

A person commits the crime of unauthorized use of a movable when he either takes or uses another's property without the owner's consent or by means of fraudulent practices. [Louisiana Revised Statutes] 14:68, although not requiring that a person

5

act with an intent to deprive the owner permanently of his property, must reasonably be construed to require the existence of fraudulent intent. *See: State v. Kelley*, 241 La. 224, 128 So.2d 18 (1961). If the statute were construed otherwise, every breach of a rental contract would be included within the reach of the statute, and the Legislature certainly did not intend such a result.

. . . .

[La.]R.S. 14:68 may be violated by a taking or use either without the consent of the owner or by means of fraudulent conduct, practices, or representations.

. . . .

. . . [W]e construe the present statute proscribing unauthorized use of a movable as requiring a showing of mens rea or criminal intent, since the "evil" state of mind of the actor normally distinguishes criminal acts (punishable by the state alone) from mere civil wrongs (actionable by private individuals against one another).

*Id.* at 1063-64.

In brief to this court, the Defendant asserts that the entire case rested on Drewitt's questionable credibility. The Defendant asserts that Drewitt conveniently omitted the terms of the loan of his truck and never testified that it was for a specified time or when he expected it to be returned. The Defendant points out that Drewitt never testified that the truck was kept longer than the agreed upon time and, when Drewitt initially talked to police, the Defendant did not have Drewitt's truck.

The Defendant further points out that Drewitt testified that a neighbor "supposedly" chased him with a gun. The Defendant asserts that it would seem Drewitt would be able to say whether someone chased him with a gun, and if he had been chased with a gun, he would have reported it to police. The Defendant asserts that he did not initially take the truck, so the question then becomes, was there an agreement as to when it was to be returned and, if so, what was the agreement.

The Defendant then asserts that if Drewitt did not testify to or perhaps recall the agreement, the State did not meet its burden of proof. The Defendant further argues that his request for money in exchange for the return of the truck did not indicate a taking. The Defendant asserts that in light of the events surrounding the loan of the truck, the

6

request for money is far more indicative of the use of the truck as collateral so that Drewitt would be fronted drugs.

We find that the Defendant had Drewitt's permission to use the truck while Drewitt was at the Defendant's residence; however, Drewitt testified that when he was forced to leave the Defendant's residence, he made it clear that he wanted his truck back and the Defendant was no longer permitted to use it. Charles returned the truck to the Defendant and later saw the Defendant drive the truck. The Defendant then called Drewitt on November 19, 2005 and stated he would return the truck if Drewitt paid him two hundred dollars. Additionally, Drewitt was driving the truck when he encountered the police and fled the scene upon exiting the vehicle. We find that flight by the Defendant was indicative of his guilty knowledge that he was not authorized to use the truck. *See State v. Dunbar*, 07-219, p. 8 (La.2/26/08), 978 So.2d 899, 904.

The verdict indicates the jury chose to believe Drewitt's testimony that the Defendant did not have permission to use the truck after Drewitt left the Defendant's residence and that credibility determination should not be second guessed by this court. *State v. Hatch*, 06-1587 (La.App. 3 Cir. 6/6/07), 964 So.2d 394. Based on the evidence presented, we find that the State proved beyond a reasonable doubt that the Defendant drove Drewitt's truck without Drewitt's permission. Accordingly, the Defendant's conviction for unauthorized use of a motor vehicle is affirmed.

*State v. Baylor*, 08-141, pp. 9-12 (La.App. 3 Cir. 11/26/08), 998 So.2d 800, 807-08, *writ denied*, 09-275 (La. 11/20/09), 25 So.3d 795.

In light of the rationale of *Baylor* and our standard of review as per *Kennerson*, the verdict herein is affirmed. As noted earlier, this case hinged upon credibility, and a determination regarding credibility is within the province of the factfinder. In this case, the trial court heard the testimony and chose to believe Ms. Spotsville and not Defendant or his witness, wife Doris Loyd. In addition, similar to the defendant's flight in *Baylor*, Defendant here fled the scene of the accident in Alexandria, which can be construed as evidence of guilty knowledge on his part. As further noted by the trial court, Defendant's failure to contact Ms. Spotsville after 3 p.m., or answer her calls until their contact by phone hours later after he totaled her vehicle, can also be construed as guilty knowledge on his part. It is also clear under

7

our law that the testimony of one witness, the victim in this case, if believed, and absent internal contradictions or irreconcilable conflicts with physical evidence, is sufficient to support a conviction. *State v. Pierre*, 14-1071 (La.App. 3 Cir. 5/6/15), 170 So.3d 348, *writ denied sub nom., State ex rel. Pierre v. State*, 15-1151 (La. 5/13/16), 191 So.3d 1054. There are no such internal contradictions or irreconcilable conflicts here. For these reasons, the assignment of error lacks merit, and Defendant's conviction is affirmed.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent which we find harmless and one error patent which requires Defendant's sentence be vacated and the case remanded for resentencing.

The record contains no written waiver of Defendant's right to trial by jury as required by La.Code Crim.P. art. 780. Defendant was charged with unauthorized use of a motor vehicle, a relative felony, as it carries the potential for imprisonment with or without hard labor for not more than two years when the value of the vehicle exceeds one thousand dollars. La.R.S. 14:68. "A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, all of whom must concur to render a verdict" and "a defendant may knowingly and intelligently waive his right to a trial by jury but no later than forty-five days prior to the trial date and the waiver shall be irrevocable." La. Const. Ann. art. I, Sec. 17. "The waiver shall be by written motion filed in the district court not later than forty-five days prior to the date the case is set for trial" and "shall be signed by the defendant and shall also be signed by defendant's counsel unless the defendant has waived his right to counsel." La.Code Crim.P. art. 780

8

In *State v. Bell*, 13-1443 (La.App. 3 Cir. 6/4/14), 140 So.3d 830, a different panel of this court held that the absence of a written waiver of jury trial, as required by La.Code Crim.P. art. 780, was harmless error where the defendant and his counsel were in open court when the judge addressed the defendant's right to a jury trial and his waiver thereof. The current version of La.Code Crim.P. art. 780 providing for a written waiver of the right became effective on July 17, 2013. Prior thereto, the article required only that a defendant knowingly and intelligently waive a trial by jury and elect to be tried by the judge, at the time of arraignment, and that the court inform the defendant of his right to waive trial by jury. Prior to the enactment of the current version of La.Code Crim.P. art. 780, there was no absolute method required for a waiver of a defendant's right to a jury trial.

> Although it remains the preferred method for the district court to advise a defendant of her right to trial by jury in open court before obtaining a waiver, such a practice is not statutorily required. *See* La.C.Cr.P. art. 780; *State v. Kahey*, 436 So.2d 475, 486 (La.1983); *State v. Muller*, 351 So.2d 143, 146-47 (La.1977). Likewise, it is preferred but not necessary, for the defendant to waive her right to jury trial personally. *State v. Wolfe*, 98-0345, pp. 6-7 (La.App. 4th Cir.4/21/99), 738 So.2d 1093, 1097. Counsel may waive the right on the defendant's behalf, provided that the defendant's decision to do so was made knowingly and intelligently. *Id.*; *Kahey*, 436 So.2d at 486-87.
>
> In the instant case, the record reflects that counsel waived a jury trial on the defendant's behalf. On the second day of trial, the district court memorialized the defendant's earlier waiver in her presence. At this time, defense counsel stated that he and his client had discussed the waiver at length and on several occasions, and that both agreed to the waiver. In these circumstances, the court of appeal erred in its determination that the defendant did not waive her right to a jury trial knowingly and intelligently.

*State v. Pierre*, 02-2665, pp. 1-2 (La. 3/28/03), 842 So.2d 321, 322

> When the trial judge does not follow the preferred method, an appellate court may nevertheless conduct a *de novo* review of the record to ascertain whether the defendant was advised of his or her right to jury trial; whether the defendant was present when his or her counsel elected a judge (bench) trial; and, if he or she was present, whether he or she voiced any objection to the election. *See State v. Denson*, 11-

9

0517, pp. 7-8 (La. App. 4 Cir. 1/25/12), 83 So.3d 1183, 1188-89; *State v. Santee*, 02-0693, p. 3 (La. App. 4 Cir. 12/4/02), 834 So.2d 533, 535.

*State v. Mahogany*, 17-377, p. 24 (La.App. 4 Cir. 7/26/17), 225 So.3d 489, 506-07, *writ denied*, 17-1416 (La. 5/18/18), 242 So.3d 1225.

In this case, Defendant was present in open court for arraignment on July 5, 2018 when his counsel waived formal reading of the bill of information and entered a not guilty plea. Immediately thereafter, Defendant's counsel requested a judge trial, in Defendant's presence. While there is no record of the trial court having advised Defendant at arraignment of his right to jury trial, Defendant was represented by counsel and voiced no opposition to the request for a bench trial. Further, at the actual trial, Defendant acknowledged before the trial judge in open court that he and counsel discussed, prior to the arraignment, his right to jury trial and the reasons for the decision to waive that right. We additionally note that Defendant was not inexperienced in the criminal process; the record reflecting an extensive arrest history and a previous conviction for felony theft of a motor vehicle, the offense for which he was on probation at the time of this trial. Thus, like the defendant in *Pierre*, Defendant's acknowledgement of the right to a jury trial and his reasons for choosing to waive such, albeit during trial, is sufficient to show a knowing and intelligent waiver. Further, Defendant requested the waiver of his right to jury trial, did not object to the granting of the waiver, and did not assign as error or argue the jury waiver issue on appeal. *State v. McKeel*, 13-855 (La.App. 3 Cir. 2/12/14), 153 So.3d 1029. Accordingly, we find that any error as to failure to file a written waiver of Defendant's jury trial right and election of a bench trial to be harmless under these circumstances.

We further find that in sentencing Defendant, the trial court failed to set the amount of restitution to be paid to the victim. Specifically, the trial court stated:

10

Order that you pay restitution to Ms. [Spotsville] for the monetary amount that she paid you, and as well as any out of pocket expenses that were not covered by insurance. Court will allow you to res - - reserve the right to a restitution hearing if you and your par - - probation or parole officer cannot agree on that amount.

In *State v. Fussell*, 06-324 (La.App. 3 Cir. 9/27/06), 941 So.2d 109, restitution was imposed pursuant to La.Code Crim.P. art. 883.2, as it was in the instant case. On error patent review, this court found the defendant's sentence was indeterminate due to the trial court's failure to set the amount of restitution. The trial court stated in pertinent part:

> I'm also gonna[sic] order you to pay all restitution involved with respect to - - if there is any - - I order you to pay for any and all medical counseling and health expenses incurred by the victim or her family, as a consequence of your conviction for these offenses. That's also gonna[sic] be - - it's an indetermined amount, it's just gonna be generally made in the judgment. I don't know what it's gonna be. I don't even know if the State's gonna[sic] make an application for that.
>
> . . . .
>
> And I've already ordered you to pay for any and all medical counseling or other health expenses incurred by the victim or her family as a consequence of your commission of those particular offenses in that case.

*Fussell*, 941 So.2d at 139.

This court vacated the defendant's sentences and remanded the case for resentencing with the instruction that if restitution was imposed, the trial court must specify the amount.

The supreme court agreed, stating:

> We agree with the Third Circuit Court of Appeal that, due to a nonspecific restitution order, the sentences imposed upon Defendant by the trial court were indeterminate and, thus, invalid. *See* La C.Cr.P. art. 879 (stating that "[i]f a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence"); La.C.Cr.P. art. 883.2. Accordingly, this case must now be remanded for resentencing on all convicted counts.

11

*State v. Fussell*, 06-2595, p. 25 (La. 1/16/08), 974 So. 2d 1223, 1238 (footnote omitted).[2]

Louisiana Code of Criminal Procedure Article 883.2 provides in pertinent part:

> A. In all cases in which the court finds an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as a part of any sentence that the court shall impose.
>
> . . . .
>
> C. The court shall order that all restitution payments be made by the defendant to the victim through the court's designated intermediary, and in no case shall the court order the defendant to deliver or send a restitution payment directly to a victim, unless the victim consents.
>
> *Text of par. D effective until August 1, 2019.*
>
> D. Notwithstanding any other provision of law to the contrary, if the defendant is found to be indigent and therefore unable to make restitution in full at the time of conviction, the court may order a periodic payment plan consistent with the person's financial ability.
>
> *Text of par. D effective August 1, 2019.*
>
> D. Notwithstanding any other provision of law to the contrary, if the defendant is found to be indigent and therefore unable to make restitution in full at the time of conviction, the court may order a periodic payment plan pursuant to the provisions of Article 875.1.

Accordingly, Defendant's sentence is vacated and the case remanded for resentencing in accordance with La.Code Crim.P. art. 883.2 with instructions that if restitution is imposed, the amount must be specified.

## DECREE

Defendant's conviction is affirmed. The sentence is vacated and the case remanded for resentencing in accordance with La.Code Crim.P. art. 883.2 with instructions that if restitution is imposed, the amount must be specified.

---

[2]Although the supreme court agreed with this court's ruling on this issue, it reversed this court on other grounds.

**CONVICICTION AFFIRMED. SENTENCE VACATED. REMANDED FOR RESENTENCING WITH INSTRUCTIONS.**

13