## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-497

**STATE OF LOUISIANA**

**VERSUS**

**EL JERICO JERMIAH BARTIE**

*********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, No. 26425-14
HONORABLE RONALD F. WARE, JUDGE

*********

**JONATHAN W. PERRY**
**JUDGE**

*********

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Jonathan W. Perry, Judges.

**DEFENDANT'S CONVICTIONS AND SENTENCES VACATED; CASE REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS.**

**Pickett, J., concurs in the result.**

**Annette Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT:**
     **El Jerico Jermiah Bartie**


**Honorable John F. DeRosier**
**District Attorney, 14th Judicial District Court**
**Parish of Calcasieu**
**Karen C. McLellan**
**Assistant District Attorney**
**Elizabeth B. Hollins**
**Assistant District Attorney**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR:**
     **State of Louisiana**

**PERRY, Judge.**

Defendant, El Jerico Jermiah Bartie, appeals the trial court's determination that he knowingly and intelligently waived his right to trial by jury. We vacate Defendant's convictions and sentences, and remand to the trial court.

## FACTS AND PROCEDURAL HISTORY

The basic facts of this case were summarized in our earlier opinion in this matter, *State v. Bartie* 18-913 (La.App. 3 Cir. 5/1/19) (unpublished opinion), as follows:

> On July 24, 2014, Defendant, El Jerico Bartie, and his wife were in a hotel room in Sulphur, Louisiana when, acting on a tip as to Defendant's location, SWAT team members of local law enforcement attempted to serve an arrest warrant on him at the hotel. Testimony indicated that the warrant was related to an earlier drive-by shooting. During a standoff, lasting approximately thirty minutes, Defendant fired multiple times through the door and out the back window of the room at eight officers. Defendant ultimately surrendered and was arrested. Upon entering the hotel room, officers discovered Defendant's wife in the bathtub of the room with a gunshot to her leg inflicted by Defendant.
>
> A grand jury indicted Defendant on October 16, 2014, on the charges of assault by drive-by shooting, a violation of La.R.S. 14:37.1; attempted second degree murder, a violation of La.R.S. 14:27 and 14:30.1; and attempted first degree murder of seven individuals, a violation of La.R.S. 14:27 and 14:30. The State filed an amended bill of information on February 16, 2018, charging Defendant with assault by drive-by shooting, attempted second degree murder, and eight counts of attempted first degree murder. The State amended the bill of information again on February 22, 2018, reiterating the same charges but alleging that the eight counts of attempted first degree murder were committed with the specific intent to kill more than one person.[1]
>
> On February 11, 2015, Defendant, through appointed counsel, filed a motion to waive his right to a jury trial. The trial court granted that motion on the same day. At the commencement of the resulting bench trial, the State indicated its intention to initially try eight counts of attempted first degree murder. It severed the remaining counts.
>
> Following a multi-day trial, the trial court found Defendant guilty as charged on all eight counts and thereafter sentenced Defendant to the

---

[1] Under the provisions of La.R.S. 14:27 and 14:30, Defendant was entitled to be tried by a jury.

maximum of fifty years at hard labor on each of the eight counts. The sentences were ordered to run concurrently and with credit for time served on each of the eight counts. The State then filed a habitual offender bill of information at that time seeking to enhance Defendant's conviction on the eighth count of attempted first degree murder. At the resulting hearing, the trial court found Defendant to be "at least a fourth felony offender" and vacated the previously-imposed sentence of fifty years on the eighth count of attempted first degree murder. The trial court then re-sentenced Defendant to the mandatory minimum sentence of fifty years at hard labor, without benefit of parole, probation, or suspension of sentence, and with credit for time served on that count. That sentence was ordered to run concurrently with the previously imposed sentences on the seven counts of attempted first degree murder.

. . . .

As indicated in appellate counsel's *Anders* brief, Defendant's trial counsel filed a Motion and Order to Waive Jury Trial that was granted by the trial court. Although the motion was signed by Defendant's attorney, the motion was not signed by Defendant. Louisiana Code of Criminal Procedure Article 780, however, provides that a motion for waiver of trial by jury "shall be signed by the defendant and shall also be signed by defendant's counsel unless the defendant has waived his right of counsel." As observed by appellate counsel, the written motion includes no indication that Defendant's attorney discussed the waiver with Defendant. Neither is there indication by minute entry that the trial court addressed the waiver with Defendant in open court. Given those factors, as well as the record's silence as a whole as to Defendant's waiver, we find that a remand for evidentiary hearing on the jury waiver issue is required. *See, e.g., State v. Cooley*, 15-40 (La.App. 3 Cir. 6/3/15), 165 So.3d 1237, appeal after remand, 15-916 (La.App. 3 Cir. 4/27/16) (unpublished opinion), *writ denied*, 16-1024 (La. 9/15/17), 225 So.3d 482.

. . . .

Defendant's convictions and sentences are conditionally affirmed. The trial court shall conduct an evidentiary hearing within thirty days of the date of this opinion to determine whether Defendant knowingly and intelligently waived his right to trial by jury. The trial court is further ordered to prepare and lodge an appellate record with this court that contains the transcript of the above-referenced evidentiary hearing within ten days of the hearing. Once that record is lodged with this court, the State and Defendant will be given the opportunity to file briefs should either party wish to raise any issue arising from the hearing.

Thereafter, on May 30, 2019, the trial court, as directed by this court, conducted a hearing to determine whether Defendant knowingly and intelligently waived his right to a trial by jury.

The first witness to testify at the evidentiary hearing was Heath Dorsey ("Mr. Dorsey"), the attorney who filed the written waiver of a trial by jury. Mr. Dorsey testified that he worked for the Calcasieu Parish Public Defender's Office ("PDO") from 2011 to 2016, during which time he represented Defendant in this criminal matter. Although Mr. Dorsey recalled representing Defendant in this matter, he did not recall whether he was the person who actually represented Defendant at arraignment.[2] Thus, Mr. Dorsey did not recall whether Defendant requested a trial by jury at arraignment. However, Mr. Dorsey did recall that he filed a motion and order to waive a trial by jury in this matter. When asked if he recalled discussing the motion with Defendant before filing it, Mr. Dorsey replied, "I don't have a particular recollection of discussing the waiver with [Defendant]." Mr. Dorsey also testified that he did not recall whether he spoke with Defendant on the day he filed the motion. According to Mr. Dorsey, he typically speaks to his clients before he files motions on their behalf. When asked if he would have signed the motion stating that Defendant wanted to waive a trial by jury without having a basis for doing so, Mr. Dorsey answered, "I think any motion that a lawyer files, he has to have a good faith basis to - - to file the motion." Mr. Dorsey assumed that he was acting in good faith when he filed the motion to waive a trial by jury in this case. Finally, the

---

[2] The record reflects Defendant was represented by multiple court-appointed lawyers during the course of this prosecution. Mr. Dorsey represented Defendant from the beginning of this case in late 2014 until late 2015. Ralph Williams appeared on Defendant's behalf on July 14, 2016, at a re-fixing of a status conference. On October 5, 2016, Jacob Richard appeared on Defendant's behalf and filed a Motion to Appoint Sanity Commission in May 2017. On May 25, 2017, Catherine Stagg was appointed to represent Defendant. Ms. Stagg remained as counsel until the appointment of the Louisiana Appellate Project for purposes of his appeal. Ms. Stagg was re-appointed for purposes of the remand hearing ordered by this Court. Defendant is again represented on this appeal by the Louisiana Appellate Project.

following colloquy took place between the State and Mr. Dorsey regarding the irrevocability of the motion to waive a trial by jury:

Q.    Considering the fact that this would be irrevocable, would you have just filed this willy-nilly without discussing it with your client? Just by chance?

A.    You're asking me to speculate. I don't know that I can answer that question.

Q.    As part of your practice would you file something that's irrevocable without speaking to your client about it?

A.    I don't believe so.

The following colloquy then took place between Mr. Dorsey and the trial court:

EXAMINATION BY THE COURT:

Q.    Mr. Dorsey, you say that you don't have a specific or a particular recollection of speaking to Mr. Bartie about filing this motion to waive trial by jury. Would you have filed it without discussing it with him, even though you may not recall the particulars?

A.    I don't believe so, Your Honor.

Q.    And, Mr. Dorsey, you realize that - - you agree that the right to trial by jury is a fundamental right - - is a fundamental right?

A.    Your Honor, as far as I am - - my recollection is that it's enshrined in the Constitution.

The next witness to testify at the evidentiary hearing was Kiara Mumford (Ms. Mumford"), a felony investigator for the District Attorney's Office.[3] According to Ms. Mumford, a record of jail calls shows Defendant made a call to the PDO on

---

[3] According to Ms. Mumford, she listened to jail calls associated with Defendant's case. Defendant's attorney objected to the admissibility of testimony regarding the jail calls and to the admissibility of the jail calls themselves based on attorney-client privilege. The State informed the court that it did not intend to discuss the contents of any jail call but intended only to discuss that a call was made. As for the relevancy of the evidence, the State informed the court that on the same day the motion to waive the jury trial was filed, there was a jail call between Defendant and the Public Defender's Office. The trial court allowed the admission of the evidence because of the nature of the hearing and because of Defendant's limited waiver of his attorney-client privilege for the hearing. As elaborated *infra* in its oral reasons for judgment, the trial court attributed "minimal value" to this jail call.

4

February 11, 2015. The motion to waive a trial by jury was filed on February 11, 2015. The call lasted nine minutes and eleven seconds and was made at 4:41 p.m. On cross-examination, Ms. Mumford and defense counsel had the following colloquy regarding the "pin numbers" used by prisoners to make phone calls:

Q.   Do you know anything about pin numbers that prisoners are given to make phone calls?

A.   I'm aware of the pin numbers, yes, ma'am.

Q.   Okay. Are you aware that in order for a prisoner to make a phone call they have to put their pin number into the - - somehow into the telephone like they're making a call?

A.   Yes, ma'am.

Q.   Okay. Are you aware of the procedure or the practice among many prisoners to share pin numbers and use other people's pin numbers?

A.   I'm not. No, ma'am.

Q.   You've never heard of that?

A.   No, ma'am. I'm not - -

When asked if Defendant would have been the only person that had the pin number used in the call at issue, Ms. Mumford replied, "I assume so, yes, ma'am." Ms. Mumford was not aware, however, of any restrictions on the ability of someone else to use the pin number.

The State introduced numerous exhibits:

- A bill of information filed on January 26, 2010, charging Defendant with possession of cocaine, and minutes of arraignment showing Defendant waived the appearance of counsel for purposes of arraignment, pled not guilty and requested a trial by jury. (S-3 in globo).

- An indictment filed on November 29, 2007, charging Defendant with possession of cocaine and possession of marijuana, and minutes of arraignment showing Defendant pled not guilty. (S-3 in globo). Minutes of arraignment also show that Defendant appeared without counsel and that the trial court ordered a jury trial. (S-3 in globo). A written Waiver of Constitutional Rights and Plea of Guilty filed on June 16, 2008, and minutes dated that same date, show Defendant pled guilty to possession of cocaine

after being advised of and waiving his constitutional rights, including the right to be tried by a jury. (S-5 in globo).

- A bill of information filed on March 12, 2007, charging Defendant with illegal discharge of a weapon, and minutes of arraignment showing Defendant pled not guilty and requested a jury trial. (S-3 in globo).

- An indictment filed on October 13, 2011, charging Defendant with possession with the intent to distribute cocaine (later amended to possession of CDS II), and minutes of arraignment showing Defendant pled not guilty and requested a jury trial. (S-3 in globo; S-5 in globo).

- A bill of information filed on October 16, 2012, charging Defendant with two counts of simple burglary. (S-5 in globo).

- A written Waiver of Constitutional Rights and Plea of Guilty filed on January 2, 2013, and minutes dated that same date, showing Defendant plead guilty to one count of simple burglary,[4] one count of possession of CDS II,[5] and one probation violation. (S-4). The written form and minutes show Defendant was advised of his right to jury trial and waived that right. (S-4).

- A bill of information filed on June 1, 2009, charging Defendant with one count of possession of cocaine and one count of simple burglary. (S-5 in globo). A written Waiver of Constitutional Rights and Plea of Guilty filed on April 5, 2010, showing Defendant pled guilty to possession of cocaine after being advised of and waiving his constitutional rights, including his right to be tried by a jury. (S-5 in globo).

- The bill of indictment filed in the present case and the minutes of arraignment wherein Defendant entered a plea of not guilty and requested a jury trial.

The State acknowledged that some of the charging instruments introduced in S-3 in globo may not have resulted in convictions. The State asserted that the purpose of introducing the evidence was to show Defendant's knowledge of his right to a trial by jury because Defendant had been arraigned multiple times, opting for a trial by jury at each arraignment.

As exhibit S-6, the State introduced a copy of the transcript in the current judge-tried case wherein Defendant testified at trial after being advised of his right against self-incrimination, after indicating he understood that right, after stating that

---

[4] This is the same simple burglary charged on October 16, 2012.

[5] This is the same possession of CDS II charged on October 13, 2011.

he had a ninth-grade education, after stating he understood how to read and write, and after being found competent to testify. Defense counsel objected to S-6, arguing the transcript was not relevant to the issue of Defendant's waiver of his right to a trial by jury. Defense counsel noted that S-6 involved Defendant's right to testify or not testify, not Defendant's right to waive a trial by jury and occurred three years after the written waiver of a trial by jury was filed. The State responded to the objection by arguing the transcript was relevant to show Defendant was alert and testified at trial. The State cited *State v. Houston*, 94-592 (La.App. 5 Cir. 12/14/94), 648 So.2d 948, a case in which the fifth circuit found Houston knowingly and intelligently waived her right to a trial by jury. Houston was advised of her right to a trial by jury at arraignment and was present on the morning of trial when her attorney told the court that Houston wanted to waive her right to a trial by jury. The court noted that Houston did not object to her counsel's statement and noted that Houston's later testimony at trial indicated that she was aware and alert. Finally, the court noted that Houston had prior experience as an accused in a criminal prosecution.

The trial court in the present case then asked the State about how long before Houston's testimony at trial had the waiver of a trial by jury occurred. The State responded:

> It was waived that morning, but the State still believes it's relevant to show that the defendant understood at the time of when he -- when he was advised by the Court that he understood his rights, as well as in the past. Because he's been - - if you put everything together, as I expressed earlier, you look at all the times this gentleman has been arraigned and before the Court and informed of his rights, all the times that he waived his constitutional rights was explained [sic], which is even a higher standard than just a waiver of a jury trial. He pled guilty. He gave up all his rights. There's a colloquy. So if you put it all together in his understanding of his rights at the time of the trial, the State thinks it's quite relevant because it paints a picture of a defendant who's quite used to and knowledgeable on the criminal system, knew

that he had a right to a jury trial multiple times, waived it this time and did not complain of it.

The trial court admitted S-6, and defense counsel objected for the reasons she had previously asserted. Defense counsel also noted that three years lapsed between the written waiver of Defendant's right to a trial by jury and his trial by a judge. Additionally, defense counsel noted, there was a sanity hearing between the motion to waive a trial by jury and Defendant's waiver of his right against self-incrimination at trial.

Finally, the State introduced S-7, a transcript of a status hearing held on February 9, 2018. The transcript shows that a plea bargain was offered but Defendant rejected it. At that time, it was mentioned that Defendant, who was present at the hearing, was going to be tried in a bench trial. Defense counsel objected to the introduction of S-7, arguing that the bench trial was discussed merely in terms of trial scheduling and not in terms of whether Defendant was voluntarily and intelligently waiving a jury trial. The State responded:

> Your Honor, it too is part of the record. But if you look at the fact that the defendant, who the State is going to argue knew the right between a judge and a jury trial the whole time based on his being before the Court so often. At that time he was told it's going to be a bench trial. So if he says, I didn't know about it in the past, he knew about it a month before the trial. He did not object to it. And, again, going back to the transcript offered before, he understood his rights at that time, when he went to testify at court, he was knowledgeable as far as that went. So the State thinks it's quite relevant to say it was discussed a month prior and he did not object to it at all.

The trial court admitted S-7. The State rested.

At defense counsel's request, the trial court accepted the following stipulation:

THE COURT:

> I'll accept that stipulation that all of the matters previously shown or presented to the Court by way of the State's Exhibits 3, 4 - - and that's it. Really, 3 and 4.

8

MS. DEVILLE: [Counsel for the State]

Just so we're clear too, there may have been two Bills of Information and minutes from arrangements [sic] that he was arraigned on - -

THE COURT:

Included - -

MS. DEVILLE:

- - but it resulted in - - did not result in a trial. They may have been subsequently dismissed, but . . .

THE COURT:

Right. All of the convictions had, and all of these matters, by - - was by way of a guilty plea, other than the case that we're here on today.

MS. DEVILLE:

Yes, Your Honor.

THE COURT:

That's the stipulation that - - right, Ms. Stagg?

MS. STAGG: [Defense Counsel]

Correct.

THE COURT:

Stipulation is admitted into evidence.

Defendant called one witness, Andrew Casanave ("Mr. Casanave"), a supervising attorney for the PDO. Mr. Casanave testified that he had no personal knowledge of Defendant's case. According to Mr. Casanave, it is rare for a trial by jury to be waived at a felony arraignment. Mr. Casanave testified that the standard procedure at arraignment is to waive formal reading of the bill, enter a plea of not guilty, and request a trial by jury. When asked if the standard procedure at the PDO was to always request a trial by jury, Mr. Casanave replied, "Until further notice,

9

absolutely." Mr. Casanave further stated, "You don't waive a - - you don't waive a constitutional right cavalierly."

As for phone calls received by the PDO, Mr. Casanave testified that the phone rings "constantly" and that there are multiple lines. There are times, Mr. Casanave testified, that a person calling the PDO has to wait a significant time on hold. According to Mr. Casanave, prisoners have a time limit to their phone conversations. When asked if phone calls go through the secretaries and investigators just as much as they go through an attorney, Mr. Casanave replied, "Yeah." Mr. Casanave testified that he frequently receives calls from clients who hand the phone to another inmate during the phone call, and he has had clients use other prisoner's pin numbers.

On cross-examination, Mr. Casanave testified that he has never filed a motion to waive a trial by jury without speaking to his client about the waiver. Mr. Casanave testified that his employment overlapped with Mr. Dorsey's employment at the PDO, and Mr. Dorsey seemed to know his cases. Mr. Casanave also testified that to some extent, he supervised Mr. Dorsey.

Defendant chose not to testify at the hearing. Thus, both parties rested and then submitted argument.[6]

The State began its argument by noting jurisprudence that recognizes a jury trial waiver need not be accompanied by the same colloquy as a guilty plea and that states the validity of each waiver depends on the unique circumstances of each case.

---

[6] We note that prior to resting, Defendant's attorney, Ms. Stagg, notified the trial court that she was prepared to give brief testimony and that Defendant had waived any attorney-client privilege as to the issue about which she would testify. The trial court expressed concern over Ms. Stagg testifying, and Ms. Stagg informed the court that the purpose of her testimony would be to say that she and Defendant never discussed "the issue." The trial court responded, "Well, I don't want to get ahead of everybody and all of us, but there's been no testimony that you did discuss it with your client." Ms. Stagg responded, "Well in that case I'll just rest. I have nothing further to add."

The State also cited *State v. Bazile*, 12-2243 (La. 5/7/13), 144 So.3d 719, for the proposition that for a defendant's waiver of a trial by jury to be knowing and intelligent, the defendant need only understand "that the choice confronting him is on one hand to be judged by a group of his people from his community, and on the other hand to have his guilt or innocence determined by the judge." Referring to Defendant's numerous prior arraignments – April 2, 2007; January 14, 2008; March 29, 2010; October 28, 2011; and October 27, 2014 – the State asserted that "it would be hard for us to believe that he did not know that he had that fundamental right." The State also referenced that Defendant pled guilty on three different occasions, thereby waiving his right to a trial by jury on each occasion. Significantly, the State argued, Mr. Dorsey represented Defendant in his most prior recent guilty plea in 2013:

> And Mr. Heath Dorsey, according to the minutes, indicated that he had gone through his rights with his client and his client was pleading guilty. In addition to that, Mr. Dorsey signed that waiver, along with his client. So obviously they had had conversations before about the defendant's right to a trial by jury, and that one was before Your Honor. You were the judge in that matter.

Although Mr. Dorsey did not remember discussing the motion to waive jury trial with Defendant, the State noted that Mr. Dorsey testified that the right to a jury trial is a fundamental right "enshrined into the Constitution." Thus, the State argued that it was logical to assume Mr. Dorsey talked with Defendant before filing the motion, especially since Mr. Dorsey represented to the trial court that Defendant was waiving a trial by jury. Additionally, the State noted that on the same day the motion to waive trial by jury was filed, a nine-minute phone call using Defendant's pin number was received by the PDO.

The State concluded its argument as follows:

> When we get closer to the trial that actually occurred, a month prior to that, as introduced in State's Exhibit 7, is a status hearing, I

guess, for lack of a better word, and there's a transcript. And on that day the defendant rejects any plea offer the State is giving him. But if you look at page 16 on to 17, the District Attorney's Office indicates that there's a double petit that on the week of February-whatever she would be having jury trial cases and the following week it would be a bench trial. And Your Honor chimed in, "As a bench trial, correct." And the defendant went on to say that he was waiving his right to - - the guilty plea or the plea bargain, and he was ready for trial. The State contends, if he didn't want a judge trial, that would have been a very good time to say, that's not what I wanted. He didn't do that. And then we have his testimony a month later where he is also coherent and intelligently waives his rights and testifies at trial. If you put all of these things together, the fact that this defendant had such a history and knowledge of the criminal justice system, we know that at least at the five arraignments and the three guilty pleas, there's a mention of a right to a jury trial.

So here we are some three years later and he's getting tried as a judge trial. The State find sit [sic] hard to believe that the defendant did not want the judge trial, did not understand or did not know that he had his options to do - - to have a jury trial instead.

And the case that I initially stated, which was the *Houston* case, is - - what I stated earlier, it's very similar to the facts here. We look to everything, including the criminal history. And I think that's what it is most importantly. His prior experiences in the criminal prosecution indicated that he had knowledge and he was making a knowing and intelligent waiver of that right. And, again, I just go back to the fact that the year before this same attorney represented him, the same attorney discussed his rights with him, he waived his right to a jury trial at that time. He knew that it existed. So for this attorney to have filed this motion to waive the jury trial, which is a fundamental right ingrained - - or instilled in the Constitution, without having talked to the defendant or having him waive that right, the State just - - that just cannot be. The State feels that it's met its burden of showing that this defendant in fact did knowingly and intelligently waive his right to a trial by jury.

In response, defense counsel argued as follows:

There's been no evidence whatsoever as to the defendant's mental state in 2014 up to February of 2015 when this motion was filed. We don't know what his mental capacity was or what he did or did not understand. I'll point out that there was a sanity hearing sometime thereafter. I was not counsel at that time, so I can't even say what caused that, but there was evidently some concern by the Court and by the counsel that there was some mental issue to be reviewed before the case could go forward at that time.

The only really [sic] evidence, true evidence, that we have about what happened on or before February 11, 2015 is the motion on its face

as well as Mr. Dorsey's testimony. And his testimony was he has no recollection particularly of this case. He also stated, and we would all agree, that he - - I'm sure he was in good faith when he filed his motion in accordance with the rules where your signature affirms that you're submitting it in good faith. But, you know, the motion simply says the defendant desires to waive trial by jury and does not - - and does request a trial by judge. That's not the issue here. The issue here is whether he knew what he was doing and understood the implications and understood the choices and understood the advice Mr. Dorsey may or may not have given him. That's not reflected in the motion and, therefore, it's not something that Mr. Dorsey could have even testified to. He may have been in good faith to file a motion that states this on its face, but it doesn't have the magic language that all of this was discussed and that the waiver was knowingly made.

Now, the DA has tried to throw a lot of stuff at the wall to see what sticks, for example, the issue of all of the arraignments. Mr. Casanave testified, and I think it's common knowledge among attorneys who do criminal practice, virtually nobody ever waives a jury trial at arraignment for many, many reasons. One is you may not have ever even spoken to your client. Number two, you may not know anything about the case. Number three, you don't have any discovery information. It's simply a way to preserve rights until it's determined whether rights should be waived. So, no matter how many arraignments he's gone through, that doesn't mean that he understood the implication between the judge and a jury trial, in any case in general or in this case in particular. By the same token, his - - his waiver of his rights and not incriminating himself that came during the 2018 trial is a totally different concept for him to understand. It's not the same concept as bench versus jury and the different issues that could arise therefore. So I don't think it would be appropriate to say, because he understood in 2018 one particular legal issue, that it reflected and confirmed that he understood or knew what was happening in 2015 on a totally different issue. Also, for the point - - as I said, the sanity issue that had arisen in the interim.

The thing about the phone calls from the jail is just really so farfetched. This call was made at 4:41 p.m. on the day this motion was filed with the Court. That would have - - the DA is trying to make it sound like Mr. Bartie knew that on that exact day someone from the Public Defender's Office was going to go and file something and he was calling to check on it and that he spoke with someone and that's what they spoke about. And there's no - - first of all, we don't even know that Mr. Bartie made this call. We've had testimony, undisputed, that prisoners trade off their pin numbers for one reason or another. We don't know whether he was put on hold, we don't know who he spoke to, if he spoke to the attorney. We don't know what the conversation was about. We don't know how many conversations were from the time - - of all the phone calls that went from the time he was arrested until February 11th. Maybe he talked to them about it, maybe he didn't.

13

But we have no knowledge of that. We have no evidence of that. This phone call is irrelevant.

Likewise, on the Boykin forms, the DA has stipulated that every other conviction that Mr. Bartie had was done by a plea, not by trial. The Boykin forms indicate that he's waiving his right to a trial by jury. But the issue of waving [sic] the right to trial so that you can enter a plea, once again, is a totally different issue as to whether - - if you're going to trial, whether you're going to choose to have a bench or a jury trial. Totally different issue. So, once again, a waiver of one right doesn't necessarily mean he knew what he was doing in another context.

I would simply submit that the State has not carried its burden.

The State briefly responded to defense counsel's argument as follows:

Just so it might be noted that, although there was a sanity commission and panel, the defendant was found competent to stand trial, and so it proceeded forward to trial. I think it's very important for the amendment - - I mean the minutes of the arraignment as well as the guilty pleas. This defendant - - it shows this defendant knew that he had a right to a trial by jury. So if he did not want a judge trial he should have said so. It goes to the whole thing that he's got a knowledge of the criminal system as being prosecuted before multiple times. It's very important.

And, again, when we look at the *Houston* case they use the transcript at the trial to show that he was competent. He had an understanding. So even that day he could have objected to the trial by judge. So when you look at everything together it is all very relevant.

The trial court then issued the following oral ruling, finding Defendant's jury trial waiver was knowing and intelligent:

Okay. Well, with respect to the phone call, I think it has minimal probative value. The length of the call, we don't know if it was dead time on the phone waiting for somebody to respond, or even after responding, I guess maybe the response of the other side, someone at the Public Defender's Office answered the phone, but was there a period of time that passed where Mr. Bartie was unable to speak to whoever he spoke to because they had to go and get him, and things of that sort. And we're all - - we're familiar with that. Often times when you call someone you don't get to speak to them immediately. So I don't know how much time passed when there was no conversation at all between Mr. Bartie and anybody. And then we don't know who the conversation was with and we don't know what the conversation was about. I found that it was admissible, but I give very, very, very little weight to the phone call. It would have involved a massive amount of

speculation to conclude that they discussed the motion, the waiver of jury trial motion. And I'm not going that far with that.

I am looking at the totality of the evidence, direct and circumstantial. I think there is something - - there's some value in the sanity hearing that was conducted, even though it was sometime after the motion had been filed. And I know that the Third Circuit considered that and had its own - - and made some comments of its own about that, but the sanity commission doctors concluded that Mr. Bartie did not suffer from - - that he was able to understand what was going on in terms of his current competency at that time. I haven't heard anything to suggest Mr. Bartie had some mental health issues prior to the sanity commission reporting back or the doctors reporting back after having been appointed to the sanity commission. And I think it is very significant that Mr. Bartie has a substantial criminal history. He's got an extensive - - he's had extensive contact and involvement with the criminal justice system, he's familiar with the process, he's even waived counsel at an arraignment, and did that on his own. That was long before this trial came about or this case came up. He's been in the system for quite a while and he's made appearances in court waiving right to counsel, waiving - - on several instances waiving a right to trial by jury by entering guilty pleas. He's not a novice. He's not someone who's totally clueless about how this system works. And, you know, his decision to testify at trial was knowingly - - I was convinced that it was knowingly and intelligently made and I think that it does have some bearing on the issues concerning the waiver of the jury trial. Now, he may have regret, making that decision to waive his right to remain silent and not incriminate himself and not testify, but that's what he did and it was found to be knowingly and intelligently made by this Court and the Third Circuit. Decision to waive jury trial, he may now regret that, but I am - - he's knowledgeable enough to know and understand what's at stake and what his rights are in this case.

Mr. Dorsey, an experienced criminal defense attorney, did say that he had no specific recollection - - I think he used the word specific recollection speaking to Mr. Bartie, then I think he used the term, didn't have a particular recollection of speaking to Mr. Bartie about the filing of the motion - - excuse me, about filing the motion to waive trial by jury. But he did recognize that it is a fundamental right, trial by jury, and he did, though hesitantly, after I asked him he did - - my appreciation of the testimony, that he did indicate that he did at least talk to Mr. Bartie about this matter. But not having any specific or particular recollection, I think the circumstances indicate that he did at least speak to him about that. And knowing his dedication to his clients and his experience as a criminal defense attorney, it would be shocking to believe that he did not talk to Mr. Bartie about waiving his right to jury trial.

Mr. Bartie is a knowledgeable person. He's been through the system with and without counsel on various occasions. He has participated in the process on numerous occasions in very serious

15

matters. Mr. Bartie knows what's going on. I'm convinced that the record supports that conclusion, and that the waiver was knowingly and intelligently made. Sometimes we make knowing and intelligent decisions that we regret later on, but they were made and you are bound by those decisions. Mr. Bartie is bound by this waiver of jury trial. After considering the totality of the evidence it's significant that the Court and Mr. Dorsey went over the Boykin forms on the one instance where Mr. Bartie pled guilty with Mr. Dorsey. I think it's also significant that - - it seems that this is on February 9, 2018 before the trial commenced, that this conversation about entering a guilty plea or negotiating a plea and not going to trial has some bearing and significance in this matter and Ms. Brittany Chavis, the prosecutor who was assigned the case and actually tried the case, had discussions with defense counsel and the Court on the record about the negotiations failing and falling through, and the offer was not accepted and that we were going to trial soon and it was made very plain and clear that it was going to be a bench trial. Mr. Bartie was called upon at that time to make a decision to accept a negotiated plea or not and he chose not to and was advised that the trial would be shortly forthcoming as a bench trial, so he knew that. At no time can I find that he indicated that he had some confusion or misunderstanding about that. Never an objection to - - never a question to the Court about that. It was known and understood for a long time that the case would be tried by judge alone.

I'm satisfied the evidence is sufficient to support the finding that Mr. Bartie knowingly and intelligently waived his right to trial by jury.

This appeal followed.

## ASSIGNMENTS OF ERROR

Defendant now contends that the trial court erred when it: (1) found Defendant knowingly and intelligently waived his right to trial by jury, and the error was not harmless; and (2) denied defense counsel's objections to the introduction of various evidence at the hearing on remand.

## ASSIGNMENT OF ERROR NUMBER ONE

In this assignment of error, Defendant urges us to find that the trial court erred when it concluded that he knowingly and intelligently waived his right to trial by jury. Defendant argues that he did not sign defense counsel's written waiver of a trial by jury, the motion did not contain any verbiage to indicate that Defendant participated in the waiver, and the record does not contain any entry showing a verbal

16

colloquy between the trial court and Defendant regarding the waiver. Defendant further contends the lack of a proper written waiver is not harmless since no evidence was admitted at the evidentiary hearing to show that defense counsel discussed the waiver with him. Accordingly, he argues that the jurisprudence is firmly established that the waiver of a fundamental constitutional right to a trial by jury may not be based upon presumptions and speculation.

In response, the State contends the trial court correctly determined Defendant knowingly and intelligently waived his right to a trial by jury. The State argues the evidence presented at the evidentiary hearing, when taken in relation to the entire transcript and Defendant's prior criminal record, showed that Defendant knowingly and intelligently waived his right to a trial by jury through his attorney.

Both the Sixth Amendment to the United States Constitution and La.Const. art. 1, § 17(A) guarantee an accused the right to a trial by jury in felony and certain misdemeanor cases. Except in capital cases, a defendant may knowingly and intelligently waive his right to trial by jury and elect to be tried by the judge. La.Const. art. 1, § 17; La.Code Crim.P. art. 780(A); La.Code Crim.P. art. 782(B). Waiver of the right to a trial by jury is never presumed. *State v. McCarroll*, 337 So.2d 475 (La.1976); *State v. Brundy*, 16-0263 (La.App. 4 Cir. 8/24/16), 198 So.3d 1247; *State v. Young*, 16-358 (La.App. 4 Cir. 10/5/16), 203 So.3d 351. To be valid, a defendant's waiver of his right to a trial by jury must be knowing and intelligent. *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 63 S.Ct. 236 (1942). "[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend on the unique circumstances of each case." *Id.*, 317 U.S. at 278. The abuse of discretion standard is used to review a trial court's finding with regard to the waiver of a trial by jury. *State v. A.D.L.*, 11-1142 (La.App. 3 Cir. 5/2/12), 92 So.3d 989.

Louisiana Code of Criminal Procedure Article 780[7] (emphasis added) states as follows:

> A. A defendant charged with an offense other than one punishable by death may knowingly and intelligently waive a trial by jury and elect to be tried by the judge.

> B. The defendant **shall** exercise his right to waive trial by jury in accordance with Article I, Section 17 of the Constitution of Louisiana. The waiver **shall** be by written motion filed in the district court not later than forty-five days prior to the date the case is set for trial. The motion **shall** be signed by the defendant and **shall** also be signed by defendant's counsel unless the defendant has waived his right to counsel.

> C. With the consent of the district attorney the defendant may waive trial by jury within forty-five days prior to the commencement of trial.

> D. A waiver of trial by jury is irrevocable and cannot be withdrawn by the defendant.

As provided in La.Code Crim.P. art. 5, "[t]he word 'shall' is mandatory, and the word 'may' is permissive."

A criminal defendant's jury waiver is deemed knowing and intelligent when he understands "that the choice confronting him is, on the one hand, to be judged by a group of people from the community, and on the other hand to have his guilt or innocence determined by a judge." *Bazile*, 144 So.3d at 733, quoting *United States ex rel. Williams v. DeRobertis*, 715 F.2d 1174, 1180 (7th Cir.1983), *cert. denied*, 464 U.S. 1072, 104 S.Ct. (1984). "That is all the defendant needs to know and understand." *Id.* at 733. "Greater proof of knowing and intelligent waiver has been neither constitutionally nor jurisprudentially required." *Id.*, quoting *State v. Johnson*, 389 So.2d 1302, 1305 (La.1980). Thus, the type of information the

---

[7] The current version of La.Code Crim.P. art. 780 providing for a written waiver of the right to trial by jury became effective on July 17, 2013. Prior thereto, the article required only that a defendant knowingly and intelligently waive a trial by jury and elect to be tried by the judge, at the time of arraignment, and that the court inform the defendant of his right to waive trial by jury. Prior to the enactment of the current version of La.Code Crim.P. art. 780, there was no absolute method required for a waiver of a defendant's right to a jury trial.

defendant must possess to make a knowing and intelligent waiver of the right to a trial by jury relates not to matters of strategy, but rather to his knowledge of his constitutional rights. *Bazile*, 144 So.3d 719.

There have been numerous Louisiana appellate cases that have addressed various errors in the waiver of trial by jury since the 2013 amendment and enactment of La.Code Crim.P. art. 780. These errors may be grouped in two categories: first, those that involve no written waiver;[8] second, those that involve a written waiver signed by defense counsel but not by the defendant.[9] Common to both categories of error is the mode of appellate review, namely, review for harmless error. As noted in *State v. Holder*, 50,171, p. 29 (La.App. 2 Cir. 12/9/15), 181 So.3d 918, 934, "Any error with respect to defendant's jury trial waiver is merely a waivable trial error and not a non-waivable structural defect." Accordingly, we will first examine the "harmless error" standard of appellate review.

In *State v. Langley*, 06-1041, pp. 11-13 (La. 5/22/07), 958 So.2d 1160, 1167-68, our supreme court, relying on *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246 (1991), addressed "harmless error" and explained it by contrasting "structural error" and "trial error," stating:

> [T]he Supreme Court has recognized structural error in a very limited class of cases. These include (1) the total deprivation of the right to counsel, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d

---

[8] *See e.g.: State v. Loyd*, 18-968 (La.App. 3 Cir. 6/5/19), 274 So.3d 112; *State v. White*, 52,530 (La.App. 2 Cir. 5/8/19), 269 So.3d 1182; *State v. Dubroc*, 18-142 (La.App. 3 Cir. 11/21/18), 261 So.3d 813; *State v. Louis*, 18-228 (La.App. 3 Cir. 11/7/18), 259 So.3d 1133; *State v. Brignac,* 17-455 (La.App. 5 Cir. 3/14/18), 241 So.3d 528; *State v. Mahogany*, 17-377 (La.App. 4 Cir. 7/26/17), 225 So.3d 489; *State v. Young*, 16-358 (La.App. 4 Cir. 10/5/16), 203 So.3d 351; *State v. McKnight*, 16-310 (La.App. 1 Cir. 9/16/16) (unpublished opinion), *writ denied*, 16-1769 (La. 6/16/17), 219 So.3d 340; *State v. Arceneaux*, 15-514 (La.App. 3 Cir. 11/4/15) (unpublished opinion); *State v. Bardwell*, 14-1072 (La.App. 3 Cir. 3/4/15) (unpublished opinion); *State v. Jones*, 14-172 (La.App. 3 Cir. 10/1/14) (unpublished opinion); and *State v. Bell*, 13-1443 (La.App. 3 Cir. 6/4/14), 140 So.3d 830.

[9] *See e.g.: State v. Duhon*, 18-593 (La.App. 1 Cir. 12/28/18), 270 So.3d 597; *State v. McElroy*, 17-826 (La.App. 3 Cir. 3/7/18), 241 So.3d 424; *State v. Cooley*, 15-916 (La.App. 3 Cir. 4/27/16) (unpublished opinion), *writ denied*, 16-1024 (La. 9/15/17), 255 So.3d 482; and *State v. Charles*, 15-518 (La.App. 3 Cir. 11/25/15), 178 So.3d 1157.

799 (1963); (2) a biased trial judge, *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); (3) unlawful exclusion of grand jurors of defendant's race, *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); (4) denial of self-representation at trial, *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); (5) denial of a public trial; *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); and (6) a defective reasonable doubt instruction, *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). *See* [*State v.*] *Ruiz*, 2006-1755, 955 So.2d at 85-86.

Other than in these six restricted classes of cases, the Supreme Court has failed to find structural error in the wide range of errors presented to it. When the Supreme Court speaks of a structural defect, it means that "the entire conduct of the trial from beginning to end is obviously affected by the [error]." *Fulminante*, 499 U.S. at 309-110, 111 S.Ct. at 1265. The two examples used in *Fulminante* to illustrate this point were the total deprivation of the right to counsel, for which a defendant would be affected by the absence of counsel from the beginning to the end of the trial, or a biased trial judge, who would be presiding over the entire trial. From these examples, it is clear that when the Supreme Court speaks of structural error, the Court is referring to something which affects the entire framework of the trial and not something which may have differing degrees of impact, depending on other trial factors.

. . . .

Clearly, the court of appeal meant something very different from the Supreme Court's interpretation when it described "structural error." The court of appeal was looking to the effect of the error. In doing so, the court of appeal erred. An analysis of the "egregiousness of the conduct" or "degrees of damage" is, in reality, the type of harmless error review that a court would use to analyze a trial error. Conversely, a structural error, by its very nature, impacts the entire framework of the trial from beginning to end, without reference to any other trial consideration.

As explained in *Fulminante*, most errors which occur are trial errors, even though they may impact a defendant's constitutional rights. However, "constitutional error does not automatically require reversal of a conviction," and indeed, "most constitutional errors can be harmless," or reviewed for harmless error. *Id.*, 499 U.S. at 306, 111 S.Ct. at 1263.

. . . .

Trial error occurs during the presentation of the case to the trier of fact and may be quantitatively assessed in the context of the other evidence presented in order to determine whether [the error] was

harmless beyond a reasonable doubt. *Fulminante*, 499 U.S. at 307-308, 111 S.Ct. at 1264; *Ruiz*, 2006-1755, 955 So.2d at 86.

Although just stated, it bears emphasizing that when a court reviews trial error, it requires a court to determine not only that the trial error was harmless but that the trial error was harmless beyond a reasonable doubt. *Langley*, 958 So.2d 1160. *In re Winship*, 397 U.S. 358, 363-4, 90 S. Ct. 1068, 1072, (1970), the court elaborated upon the concept of reasonable doubt and stated:

> The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. . . . As we said in *Speiser v. Randall*, *supra*, 357 U.S., at 525-526, 78 S.Ct., at 1342: 'There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value—as a criminal defendant his liberty— this margin of error is reduced as to him by the process of placing on the other party the burden of . . . persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt. Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the factfinder of his guilt.' To this end, the reasonable-doubt standard is indispensable, for it 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.' Dorsen & Rezneck, In Re Gault and the Future of Juvenile Law, 1 Family Law Quarterly, No. 4, pp. 1, 26 (1967).

As this court noted in Defendant's original appeal, the record contains no minute entry or transcript wherein Defendant informed the trial court that he wanted a judge trial over a trial by jury. The record is equally clear that Defendant did not sign the written waiver of a jury trial his trial counsel filed. Thus, the record is devoid of a personal wavier by Defendant. Notwithstanding, in *State v. Spurlock*, 15-1173, pp. 1-2 (La. 9/25/15), 175 So.3d 955, 955-56, the supreme court found a personal waiver was not necessary as long as the defendant's decision was knowingly and intelligently made:

It is preferred but not statutorily required for the defendant to waive his right to a jury trial personally. *State v. Pierre*, 2002–2665 (La.3/28/03), 842 So.2d 321. Defense counsel may waive the right on his client's behalf, provided that the defendant's decision to do so was made knowingly and intelligently. *Id.* . . . The defendant's prior criminal history may be considered in determining whether the defendant knowingly and intelligently waived his right to a jury trial. *See State v. Phillips*, 365 So.2d 1304, 1309 (La.1978).

In these proceedings, the defendant was aware prior to the instant criminal charges of his due process entitlements as they related to a choice to have his guilt or innocence determined by a judge or a jury of his peers. Among other criminal matters, the defendant has past experience as an accused in the trial of a criminal prosecution where he was found guilty by a jury. *See State v. Spurlock*, 539 So.2d 977 (La.App. 4th Cir.1989). In the instant case, the trial record and defense counsel's hearing testimony, which was not found to lack credibility, reflect defense counsel, after consulting with the defendant, waived the defendant's right to a jury trial in open court in the presence of the defendant. Weeks later, the defendant proceeded to a bench trial without raising an objection to the absence of a jury. Under the given facts, the defendant' waiver of a jury trial was knowing and intelligent.

When an appellate court conducts a harmless error analysis where there is no written waiver of a trial by jury in conformity with the 2013 amendment to La.Code Crim.P. art. 780, it is proper to review the jurisprudence regarding the validity of waivers of trial by jury before the 2013 amendment; in so doing, where the record shows a defendant knowingly and voluntarily waived his right to a jury trial, the lack of a properly written jury trial waiver constitutes harmless error. *See State v. Mahogany*, 17-377 (La.App. 4 Cir. 7/26/17), 225 So.3d 489; *State v. Brignac*, 17-455 (La.App. 5 Cir. 3/14/18), 241 So.3d 528.

In finding Defendant knowingly and intelligently waived his right to jury trial, the trial court relied upon the following: (1) its disbelief that an experienced and conscientious attorney such as Defendant's defense attorney would waive an important constitutional right without first discussing it with Defendant; (2) Defendant's prior experience with criminal proceedings; (3) the report of a sanity commission doctor who opined that Defendant was competent and understood what

he was doing; (4) a transcript of Defendant's waiver of his right against self-incrimination at his trial, indicating Defendant was alert and aware during trial and indicating Defendant's ability to waive an important constitutional right; (5) a transcript of a pre-trial status hearing wherein Defendant's upcoming trial was referred to as a "bench trial"; and (6) Defendant's failure to object when his case proceeded with a bench trial. For the following reasons, we find the trial court abused its discretion and reverse its determination that Defendant knowingly and intelligently waived his right to a trial by jury.

*Evidence about the Defense Attorney*

Defendant argues that the trial court's conclusion that Mr. Dorsey must have spoken with Defendant about the waiver of jury trial is not supported by the record. We agree. Although Mr. Dorsey recognized that trial by jury is a fundamental right and that he believed he would not have filed the waiver motion without having discussed it with Defendant, Mr. Dorsey repeatedly asserted he did not recall having discussed the issue with Defendant. In light of the record, it is clear that the trial court had to rely on presumption to reach the conclusion it did. Such a presumption cannot form the basis for a valid waiver of a jury trial and is not one that was knowingly and intelligently made. *See McCarroll*, 337 So.2d 475.

Under these particular facts, absent an in-court discussion or an acknowledgment from counsel that the issue was discussed and the client consented to the waiver, or a knowing waiver is shown by other means, such as the inclusion of a statement to that effect in the body of the motion to waive jury trial, it cannot be said that Defendant knowingly and intelligently consented to the waiver of his constitutional right to a trial by jury. Compare, *State v. Duhon*, 18-593 (La.App. 1 Cir. 12/28/18), 270 So.3d 597 (where the written waiver of trial by jury included language that the defendant understood his right to a jury and knowingly waived that

23

right); *State v. Bell*, 13-1443 (La.App. 3 Cir. 6/14/14), 140 So.3d 830; *State v. Charles*, 15-518 (La.App. 3 Cir. 11/25/15), 178 So.3d 1157; and *State v. McElroy*, 17-826 (La.App. 3 Cir. 3/7/18), 241 So.3d 424 (all acknowledging a valid waiver of a trial by jury when the trial court personally addressed the defendants about their right to waive a trial by jury even though none of them had signed a waiver document).

*Defendant's prior experience with criminal proceedings*

Although Defendant acknowledges that a defendant's familiarity with the criminal justice system is a legitimate factor to consider in determining whether his jury trial waiver was knowingly and intelligently made, he contends that in most cases, the defendant previously went to trial. However, our review of the record highlights that Defendant had never previously proceeded to trial. Rather, the record reveals that Defendant's previous criminal cases resulted in guilty pleas. Even though Defendant may have waived his right to a trial by jury in each of his previous guilty pleas, there never was a discussion at those pleas regarding the distinction between a judge trial and a trial by jury. As for the State's assertion that in one of Defendant's previous arraignments, he requested a trial by jury on his own, without being represented by counsel, our review of the court minutes actually indicates that the trial court, acting on Defendant's behalf, waived the reading of the bill, entered a plea of not guilty, and ordered a trial by jury. There is no indication that Defendant, on his own, requested a trial by jury.

*Evidence from the Sanity Commission*

In our earlier opinion in this case, we stated:

> Alternatively, the State contends that the record shows Defendant knowingly and intelligently waived his right to jury trial. It references the sanity commission report of one of the examining doctors and argues that it shows Defendant knew he had the right to choose between a judge or a jury and understood the function of each.

> Importantly, however, the sanity evaluation occurred on July 5, 2017, whereas defense counsel's written motion to waive jury trial was filed more than two years earlier, on February 11, 2015.
>
> Additionally, the sanity commission report passage relied upon by the State does not show Defendant knowingly and intelligently waived his right to jury trial. In *State v. Bazile*, 12-2243, p. 19 (La. 5/7/13), 144 So.3d 719, 734, the supreme court explained that: "[A] criminal defendant's waiver of his right to trial by jury is knowing and intelligent when he demonstrates his understanding that he will proceed to trial before a judge upon that waiver." In this regard, a passage in the sanity commission report referenced by the State indicates that, when asked if he knew he had the right to choose between a judge trial and a jury trial, Defendant initially responded, "I didn't know that." Again, that response occurred two years after the written waiver was filed. Moreover, as appellate counsel notes by reply brief, the notations made by the examining doctor suggest that Defendant believed a jury trial would be more favorable for someone facing a "major" case, and Defendant had previously described the charges against him as major.

*Bartie*, at 4-5.

Our review of the record on remand to the trial court shows that no one at the evidentiary hearing addressed the impact of the sanity commission report discussed by this court in Defendant's original appeal. To the contrary, nothing in the evidentiary hearing causes us to conclude any differently than we did in our initial opinion about the impact of the sanity commission report.

*Defendant's appreciation of his right to testify*

It cannot be gainsaid that Defendant appreciated his constitutional right not to testify at trial. The trial transcript bears out his understanding of that right and his knowing and intelligent waiver of that right. Notwithstanding, although the transcript of Defendant's waiver of his right against self-incrimination shows Defendant is capable of knowingly and intelligently waiving a constitutional right, the transcript does not show Defendant actually waived the specific constitutional right at issue, namely his right to a trial by jury.

It is likewise disingenuous to state that Defendant proceeded to a judge trial without objection and, thus, independent of trial counsel's failure to have Defendant

25

sign the required waiver form required by La.Code Crim.P. art. 780, this evidences the waiver of his constitutionally recognized right to a trial by jury. Once again, to reach that conclusion requires us to presume such a waiver. This, we cannot do. *McCarroll*, 337 So.2d 475; compare, *State v. Loyd,* 18-968 (La.App. 3 Cir. 6/5/19), 274 So.3d 112 (where, at the actual trial, the defendant acknowledged before the trial judge in open court that he and counsel discussed, prior to the arraignment, his right to jury trial and the reasons for the decision to waive that right); *State v. Young*, 16-358 (La.App. 4 Cir. 10/5/16), 203 So.3d 351 (holding that when a defendant fails to object when his counsel informed the court, while the defendant was present in court, that a bench trial had been chosen is construed against the defendant in determining the validity of the waiver made).

*Defendant's pre-trial status hearing*

The transcript of the status hearing held on February 9, 2018, a month before the trial, was admitted into evidence. It shows that when the parties were selecting a trial date, it was mentioned that it would be a bench trial. We observe that during this hearing, contrary to the State's contention that the second week would be the judge trial of defendant, the terms "judge trial" or "trial by judge" were not mentioned. Instead, while scheduling the trial date, the following was stated:

> Ms. Chavis [ADA]: . . . We currently have a petit trial date set February the 26th of 2018. I advised Ms. Stagg that it is a double week, so if a jury trial is fixed for February 26th and we anticipate trying it the second week, March the 5th of 2018, the –
>
> The Court: As a bench trial.
>
> Ms. Chavis: - - as a bench trial, correct. . . .

As further shown in the record, Defendant, later in the discussion, simply stated he wanted a trial, and he was ready for trial. It is abundantly clear that: (1) there was no discussion that this would be either a trial before the judge or a trial by jury; (2)

26

no discussion was had concerning a waiver of a trial by jury; and (3) "bench trial" was mentioned merely for scheduling purposes. Moreover, there was no evidence presented at the hearing or in the record that Defendant understood what the term "bench trial" meant,[10] and this reference does not rise to the level of the right to a trial by jury being waived in Defendant's presence.

After carefully reviewing the record, we find the record does not support the trial court's ruling that Defendant knowingly and intelligently waived his right to jury trial. We find the trial court abused its discretion in finding otherwise. The only direct evidence of the waiver is a written motion filed by Defendant's counsel but not signed by Defendant. There is no other indication in the record of the waiver and no colloquy in open court discussing the waiver in Defendant's presence. Although the attorney who filed the motion on Defendant's behalf gave some indication that he would not waive such an important right without speaking with his client, the attorney had no recollection of speaking with Defendant about the waiver. Thus, there is no evidence that the waiver was discussed either with Defendant or in Defendant's presence. Accordingly, under the particular facts of this case, Defendant's failure to sign the motion waiving his constitutional right to a trial by jury was not a harmless error beyond a reasonable doubt.

The present case is distinguishable from cases in which a valid waiver of right to a trial by jury has been found. As discussed in Defendant's original appeal, the first circuit's decision in *Duhon*, 270 So.3d 597, is distinguishable from the present case. The written waiver in *Duhon* contained language that specifically stated that Duhon and his attorney had consulted about the waiver, stated that Duhon

---

[10] Compare *Brignac,* 241 So.3d at 534, where the trial court advised the defendant on the record of his right to either a jury or bench trial, noting, "[a] trial, if you choose to go Judge Trial, would be me. But if you choose to go Jury would be twelve other prospective jurors who would hear all of this to make a determination."

understood his right to a trial by jury, and stated that Duhon knowingly, voluntarily, and intelligently waived that right. The record in *Duhon* also contained a minute entry which indicated the trial court and defense attorney concurred that "the matter" had been taken care of. Finally, *Duhon* did not contest statements made by the prosecutor and the trial court at a motion for new trial hearing that Duhon knowingly and intelligently waived his right to jury trial. None of these evidentiary benchmarks exist in the present case.

In *Cooley*, 15-916 (La.App. 3 Cir. 4/27/16) (unpublished opinion), *writ denied*, 16-1024 (La. 9/15/17), 225 So.3d 482, this court found a valid waiver of a trial by jury after the matter had been remanded for an evidentiary hearing. Like the present case, the record contained a written motion to elect judge trial signed by Cooley's attorney but not by Cooley. Upon remand for an evidentiary hearing, Cooley, like the Defendant in the present case, refused to testify. The evidence introduced at the evidentiary hearing showed Cooley was advised of his right to a jury trial at arraignment and at his no contest plea. Although there was no minute entry or transcript wherein Cooley informed the trial court that he wanted a judge trial over a trial by jury and no evidence that Cooley had a prior criminal history, this court found there was direct evidence that Cooley had been consulted about the written waiver before it was filed. There was also direct evidence that Cooley told one of his attorneys that he wanted a judge trial. That attorney testified at the evidentiary hearing that she believed Defendant knew he had a right to a trial by jury and knew the difference between a jury trial and a judge trial. No such testimony was presented at the evidentiary hearing in the present case.

Also, this court in *A.D.L.*, 92 So.3d 989, remanded the matter to the trial court for an evidentiary hearing to determine whether A.D.L. validly waived his right to a trial by jury. A.D.L. did not testify at the evidentiary hearing. A.D.L.'s attorney,

28

Edward Lopez, testified at the evidentiary hearing that he made the decision that A.D.L. would be better off being tried by a judge. Mr. Lopez recalled that he discussed the matter with A.D.L., whom he believed was intelligent and able to comprehend the general nature of the matter he was facing. Mr. Lopez believed A.D.L. had made a knowing and intelligent decision to follow his advice to elect a judge trial. This court noted that although A.D.L. was not in the room when Mr. Lopez advised the trial judge of the waiver, A.D.L. was in the courthouse at that time. Upholding the trial court's determination that A.D.L. entered a knowing and intelligent waiver, this court stated:

> At the evidentiary hearing, there was nothing before the hearing judge to refute Defendant's trial counsel's testimony that Defendant knowingly and intelligently waived a jury trial. The hearing judge had Attorney Lopez's testimony to consider, and, as pointed out by the State, Defendant made no objection during trial, nor raised the issue on appeal. The trier of fact can accept or reject, in whole or in part, the testimony of any witness. Furthermore, it is not the function of the appellate court to second-guess the credibility of a witness as determined by the trier of fact or to reweigh evidence absent impingement on the fundamental due process of law. Finally, whereas the issue of whether Defendant waived the right to a jury trial was an issue of fact and not law, we cannot say that the hearing judge abused his considerable discretion.

*Id.* at 1001 (citation omitted). In stark contrast to the present case, there was direct testimony from A.D.L.'s trial counsel that the defendant knowingly and intelligently waived his right to trial by jury. In the present case, Mr. Dorsey could not make such a statement.

The fifth circuit in *State v. Singleton*, 07-321 (La.App. 5 Cir. 10/30/07), 971 So.2d 396, *writ denied*, 09-2021 (La. 8/18/10), 42 So.3d 391, has also addressed the situation where there is no personal waiver of a trial by jury. As in the present case, Singleton's attorney filed a written motion to waive a trial by jury but failed to have Singleton sign the motion. Unlike the motion filed in the present case, in the motion filed in *Singleton*, defense counsel asserted that he consulted with Singleton and that

Singleton fully understood and wanted to waive a trial by jury. Additionally, unlike the present case, Singleton testified at the evidentiary hearing. Although Singleton admitted that his attorney told him a bench trial would be best, Singleton denied telling his attorney to file the written waiver. Despite Singleton's lack of signature on the written motion and despite Singleton's testimony at the evidentiary hearing, the fifth circuit found the testimonies elicited at the evidentiary hearing showed a valid waiver:

> At the evidentiary hearing, defendant acknowledged at least one telephone conversation with defense counsel where his counsel explained the benefit of a bench trial rather than a jury trial. Defendant said that when his defense counsel told him this, defendant responded that he was the lawyer and knew what he was talking about. At the evidentiary hearing, however, defendant explained to the judge he found out after trial that it was better to have a jury trial because ten out of twelve people render a verdict instead of the one judge. . . .

> Mr. Folse [Singleton's attorney] testified at the hearing that they had discussed in depth his choice between a bench trial and a jury trial on several occasions. Although Mr. Folse could not explain why defendant failed to sign the motion, he testified that defendant was fully aware that he would file a Motion to Waive a Jury Trial and was in agreement. Mr. Folse also recalled defendant deciding to waive his right to a jury trial after the trial court expressed what it thought might be in defendant's best interest.

> In addition, although not on the record, the trial court recalled defendant specifically telling defense counsel that he wanted a bench trial.

> The evidence produced at the evidentiary hearing makes the present case distinguishable from other cases in which this Court has reversed convictions based on insufficient evidence of a valid jury trial waiver.

*Id*. at 399 (citation omitted) (footnote omitted).

In stark contrast to *Cooley, A.D.L*, and *Singleton,* we find the present case is more akin to cases where no valid waiver was found. In *State v. James*, 99-1047 (La.App. 5 Cir. 1/25/00), 751 So.2d 419, the fifth circuit found no valid waiver when the only evidence of a waiver was the arraignment transcript, which showed the trial

court advised James of his right to a jury trial but showed no response by either James or James's attorney. Further, there was no written waiver prior to trial. Finally, James's former defense counsel testified at the evidentiary hearing that he presumed James waived a trial by jury since no jury trial was held. Although there was a written waiver in the present case, Defendant's attorney did not specifically remember discussing the motion with Defendant.

In *State v. Lokey*, 04-616 (La.App. 5 Cir. 11/30/04), 889 So.2d 1151, *writ denied*, 04-3195 (La. 5/6/05), 901 So.2d 1093, the fifth circuit found no valid waiver despite the testimony of Lokey's attorney at the evidentiary hearing that Lokey chose a bench trial after they discussed the issue. There was no documentary evidence in *Lokey* of a waiver either personally or through Lokey's attorney. Moreover, the appellate court found trial counsel's testimony was inadequate because he never sufficiently explained Lokey's rights regarding a jury trial, thus insuring a knowing and intelligent waiver.

Likewise, in *State v. Onstead*, 05-410 (La.App. 5 Cir. 1/17/06), 922 So.2d 622, the fifth circuit found no valid waiver when the only two witnesses to testify at the evidentiary hearing were Onstead himself and the assistant district attorney. Onstead testified that he did not recall discussing the matter with his attorney, who did not testify at the evidentiary hearing. Additionally, the fifth circuit noted that the assistant district attorney who testified at the hearing was not in a position to know how much Onstead's attorney explained to Onstead in advance of trial.

Finally, in *State v. Dorsey*, 00-114 (La.App. 3 Cir. 6/7/00), 768 So.2d 109, this court found no valid waiver when Dorsey's attorney filed a written motion to waive a trial by jury that was not signed by Dorsey, and the only witness to testify at the evidentiary hearing was Dorsey. Dorsey testified he had never seen the written motion to waive a trial by jury, and he did not remember his attorney discussing with

31

him his right to a jury or judge trial. Although the present Defendant's attorney testified at the evidentiary hearing, Defendant's attorney did not remember discussing the waiver with Defendant.

Considering the above, we find the record in the present case does not support a finding that Defendant knowingly and intelligently waived his right to a trial by jury.[11]

## DISPOSITION

For the foregoing reasons, we find that the trial court abused its discretion when it determined that Defendant knowingly and intelligently waived his right to a jury trial. Therefore, we vacate Defendant's convictions and sentences and remand this case to the trial court for further proceedings consistent with this court's opinion.

**DEFENDANT'S CONVICTIONS AND SENTENCES VACATED; CASE REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS.**

---

[11] Because we find Defendant did not knowingly and intelligently waive his right to jury trial, we pretermit discussion of Defendant's second assignment of error.